*Tuc#027906*                                    **105**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DRAEGER SAFETY DIAGNOSTICS, INC.

          Plaintiff,

      v.

NEW HORIZON INTERLOCK, INC.

          Defendant.

> Case:2:11-mc-50160
> Judge: Roberts, Victoria A
> MJ: Majzoub, Mona K
> Filed: 02-08-2011 At 09:53 AM
> PET TO CONFIRM:DRAEGER SAFETY DIAGN
> OSTICS V NEW HORIZON INTERLOCK (LG)

*Expedited Consideration Requested*

---

## DRAEGER SAFETY DIAGNOSTIC INC.'S PETITION TO CONFIRM AND ENFORCE THE INTERIM ARBITRATION AWARD FOR EMERGENCY RELIEF

Plaintiff Draeger Safety Diagnostics, Inc. ("Draeger"), by and through its undersigned counsel, and pursuant to Section 9 of the Federal Arbitration Act, petitions this Court for the entry of an Order confirming and enforcing the Interim Arbitration Award for Emergency Relief in its favor and against Defendant New Horizon Interlock, Inc. ("New Horizon"). In support of this Petition, Draeger states as follows:

### PARTIES

1.      Plaintiff Draeger Safety Diagnostics, Inc. ("Draeger") is a Delaware corporation with its principal place of business in Texas, having a business address of 4140 W. Royal Lane, Suite 136, Irving, Texas, 75063.

2.      Defendant New Horizon Interlock, Inc. ("New Horizon") is a Michigan corporation with its principal place of business in Michigan, having a business address of 29234 Lyon Oaks Drive, Wixom, Michigan 48393.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action to enforce the Interim Award of Emergency Relief under 28 U.S.C. § 1332 because Draeger is a Delaware corporation with its principle place of business in Texas, New Horizon is a Michigan corporation with its principal place of business in Michigan, and the amount in controversy exceeds $75,000.

4.      Venue is proper in this Court pursuant to 9 U.S.C. § 9 of the Federal Arbitration Act because the dispute arose in this district and because New Horizon is subject to the personal jurisdiction of this Court.

## CLAIM FOR RELIEF

5.      The allegations of Paragraphs 1 - 4 above are realleged.

6.      Draeger manufactures, among other products, the Dräger Interlock XT, a breath alcohol ignition interlock device ("BAIID") that, when placed in a motor vehicle, can prevent the vehicle from being started if the driver's breath alcohol concentration is higher than the state's limit.

7.      On May 29, 2008, Draeger entered into a Draeger Authorized Service Provider Agreement ("Agreement") with New Horizon in order for New Horizon to become a Draeger Authorized Service Provider within the State of Michigan and install, calibrate, and otherwise service Dräger Interlock devices.  See Exhibit 1, Draeger Authorized Service Provider Agreement dated May 29, 2008.

8.      Upon termination of the Agreement, New Horizon was responsible for, among other things, returning all records, electronic data, and reports associated with the Interlock devices and the customers who leased the interlock devices.

-2-

9.      Upon expiration of the Agreement, New Horizon, among other things, failed to return the customer records, data, and other equipment and failed to pay lease fees.

10.     In January, 2011, Draeger commenced an arbitration proceeding with the American Arbitration Association against New Horizon seeking approximately $250,000 for New Horizon's breaches of the Agreement and requested emergency arbitration to order New Horizon to return all customer records, data, and other equipment.  See Exhibit 2, Demand for Arbitration dated January 10, 2011, and Exhibit 3, Demand for Emergency Arbitration dated January 18, 2011.

11.     On January 25, 2011, an emergency hearing was held via telephone with Emergency Arbitrator Sabater.

12.     New Horizon did not respond to the arbitration demand and failed to appear for the emergency hearing.

13.     On February 1, 2011, Arbitrator Sabater issued an Interim Award for Emergency Relief ordering New Horizon to return to Draeger all:

a.   Customer records, data, and other reports as described in Section 3(c) of the Agreement; and

b.   Any and all Draeger's interlock devices in New Horizon's possession. See Exhibit 4, Interim Award for Emergency Relief dated February 1, 2011.

14.     New Horizon is also obligated to pay any reasonable costs - including fees and expenses - incurred by Draeger in connection with the emergency arbitration.

15.     Despite service of the Interim Award of Emergency Relief by the American Arbitration Association and demand for compliance with the Interim Award of Emergency Relief, New Horizon has failed and refused to comply.

16.     Draeger is entitled to the confirmation and enforcement of the Interim Award of Emergency Relief as a judgment against New Horizon.

17.     Draeger is entitled to its attorneys' fees and costs incurred in bringing this enforcement action, as well as interest on the award.

WHEREFORE, Draeger respectfully request that this Honorable Court enter judgment against New Horizon confirming and enforcing the Interim Award of Emergency Relief, for pre-judgment interest, for post-judgment interest and for attorneys' fees and costs incurred in bringing this action.

Respectfully submitted,

DAVID MURPHY (P22980)
JAMES D. VANDEWYNGEARDE (P58634)
PEPPER HAMILTON LLP
100 Renaissance Center, Suite 3600
Detroit, Michigan 48243-1157
vandewyj@pepperlaw.com
Tel: 313.259.7110

A. CHRISTOPHER YOUNG
JENNIFER LAMBERT
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, Pennsylvania 19103-2799
Tel: 215.981.4000

Dated: February 8, 2011               *Attorneys for Plaintiff Draeger Safety Diagnostics, Inc.*
#13823237 v1 (999922.2006)

Draeger Safety Diagnostics, Inc.



# DRAEGER AUTHORIZED SERVICE PROVIDER
# AGREEMENT

This Agreement is entered into by Draeger Safety Diagnostics, Inc., (hereinafter referred to as "Draeger"), whose address is 4040 W. Royal Lane, Suite 136, Irving, TX 75063 and **New Horizon Interlock, Inc.,** (hereinafter referred to as "DASP"), whose address is 29234 Lyon Oaks Drive, Wixom, MI 48393.

*Whereas,* Draeger is the manufacturer and Lessor of Draeger products (hereinafter known as "device(s)," "Draeger Interlock devices," "interlock[s]," or "ignition interlock[s]") designed for use in motor vehicles. Draeger is responsible for all service, maintenance and upgrade described in this Agreement (including firmware, software associated with the performance of the ignition interlock device which is the subject of this Agreement and hardware repairs and changes that are required to meet the need of the market and the customers and Clients therein from time to time) and continuing research, design, and development of such equipment.

*Whereas,* Draeger shall retain responsibility for reporting all Client compliance and non-compliance to the appropriate governing agency. In addition, Draeger shall strive to increase utilization of ignition interlock technology through marketing and business development efforts.

*Whereas,* Draeger, as manufacturer and Lessor of such devices, seeks an authorized Service Provider (hereinafter referred to as the "DASP") to provide field services consistent with Draeger standards of quality that include (but are not limited to) the installation, periodic calibration, and authorized removal of the Draeger Interlock device(s), and any future ignition interlock device(s) that might be developed by Draeger as part of continued responsibilities that it has for research and development of newer interlock devices (the "devices").

*Whereas,* DASP desires to be authorized to install, inspect, calibrate, and de-install the Draeger Interlock device(s) upon the terms and conditions set forth below.

**NOW THEREFORE, THE PREMISES CONSIDERED THE PARTIES AGREE AS FOLLOWS:**

1. Appointment as DASP. Draeger hereby appoints DASP to be Draeger's authorized Service Provider to Draeger Clients (equipment Lessees) in order to provide the services listed herein at the address or addresses listed in Exhibit A. DASP agrees to abide by the terms and conditions as set forth herein, assure that all service technicians it employs for the purposes of installing and maintaining Draeger Interlock devices are trained to Draeger standards, and provide the following services on such devices:

   a. installs/de-installs the devices as required on Draeger's Clients automobiles or other means of conveyance, as well as safety sensitive workplaces that might require the use of a device, and

Draeger Safety Diagnostics, Inc.

    b. provides calibration services of the devices as required by such equipment or by agreement with Judicial or Governmental agencies, and

    c. collects electronic data from the device and Client program information to be transferred to Draeger at times and by means designated by Draeger. Draeger shall retain responsibility for dissemination of Client data to appropriate authorities, and

    d. is responsible for the cost and expense to establish and maintain DASP facilities and trained service technicians.

2. <u>Term.</u> The term of this Agreement shall commence on July 1, 2008, and continue through June 30, 2010, unless sooner terminated pursuant to Paragraph 3. This Agreement shall automatically renew for an additional 1-year increment thereafter unless either party gives 30 days written notice to the other of its intent not to renew.

3. <u>Termination by Draeger or DASP.</u>

    a. This Agreement may be terminated prior to the expiration of its term by Draeger or DASP upon the occurrence of any of the following events, each of which will be deemed a default hereunder.

        i. Immediately, upon any material breach of this Agreement (a material breach is defined as (a) a failure to timely pay invoices or meet other payment obligations; (b) a breach of Paragraph 4, 7, 8, 17, or 20(g) of this Agreement; (c) any failure to comply with any provision of this Agreement that is not cured within the cure period set forth in subsection 3.a.ii. below; or (d) any act found to involve fraud or misrepresentation by a party or by any conviction of a criminal act in any state by the other party); or

        ii. Upon thirty (30) days written notice to DASP of any breach or failure of performance by DASP of any provision of this Agreement, or failure to perform an obligation within the time period prescribed which is not cured within a thirty (30) day period following the notice of breach or failure of performance; or

        iii. Immediately, if DASP or Draeger becomes insolvent or makes a general assignment for the benefit of creditors, or to an agent authorized to liquidate its property or assets; or becomes bankrupt, or voluntarily files a petition in bankruptcy, or has a voluntary petition in bankruptcy filed against it; or suffers the appointment of a receiver of any of its assets and property; or upon the dissolution or liquidation of DASP or Draeger; or

        iv. Immediately, if a governmental or judicial entity prohibits interlock Clients from obtaining service from DASP; or

        v. Immediately, if there is consequential change in the number of days or hours available to Draeger Clients for service as recorded in Exhibit B of this Agreement.

Draeger Safety Diagnostics, Inc.

b. In the event of such cancellation, termination or expiration of this Agreement, or in the event that Draeger or DASP provides written notice of a breach of this Agreement, DASP shall not remove any device from a Client vehicle without written approval from Draeger. Further, should DASP be directed by Draeger or any legislative or other entity to which Draeger is contractually obligated to provide interlock services, to remove installed interlocks, such removal costs will be the responsibility of DASP.

c. Within five (5) days of cancellation, termination or expiration of this Agreement, DASP shall return to Draeger all un-installed rented/leased devices and equipment in its possession, and turn over all records, electronic data, and reports relating to this Agreement. The parties expressly acknowledge and agree that such records, electronic data, and reports relating to the services provided pursuant to this Agreement are the property of Draeger; provided, however, that DASP may retain copies of such records, electronic data, and reports for the purpose of complying with statutory data or records retention obligations or for prosecuting or defending non-payment, default, or other claims relating to DASP services.

4. <u>Scope of Services by DASP</u>. DASP will provide service at the address or addresses listed in Exhibit A. DASP will collect and transfer electronic records to Draeger as required by the respective referring agencies.

a. <u>Good and Workmanlike Manner</u>. DASP shall perform all installations, calibrations, services, maintenance, repairs, and removals, under this Agreement in a good and workmanlike manner.

b. <u>Maintenance</u>. DASP shall perform preventive maintenance not otherwise covered by Warranties on the devices to keep the devices in good working order (defined as meeting or exceeding Draeger's Quality Assurance Program for all interlock service providers), and shall provide all labor, tools and equipment required to correct any routine, non-warranty problem with the device. Draeger's current Preventive Maintenance Schedule is attached hereto as Exhibit B.

c. <u>Routine Records</u>. DASP shall transmit to Draeger electronic Client records including device data, according to the terms and conditions specified by Draeger or the respective state administrative or judicial programs. Draeger shall be responsible for providing required reports and information to governing authorities.

d. <u>Phone and Internet Service</u>. DASP shall provide phone and/or Internet service to adequately facilitate day-to-day operations, or as specifically outlined by a state or jurisdiction, continuously throughout the life of this Agreement. Governmentally required toll-free phone service that might be required by such authorities shall be provided by Draeger.

e. <u>Service Response</u>. DASP must respond to all referrals by Draeger or any Jurisdiction to potential Clients within 48 hours of notification thereof. DASP must as soon as practicable provide maintenance service for Devices in the event that a Device calls for "SERVICE REQUIRED" or is malfunctioning. DASP must use reasonable efforts to prevent a Client from operating a motor vehicle without a functioning Device. In the event that a motor

Draeger Safety Diagnostics, Inc.

vehicle has been driven by a Client without an operating Device, DASP must notify Draeger immediately. Draeger shall be responsible for notifying the proper authorities as required.

f.  Service Accessibility. Work hours expended and the number of locations and technicians employed to provide services must be sufficient to meet or exceed each Jurisdiction's applicable requirements.

g.  Service Days and Hours. DASP service location or locations shall be open and available to Draeger Clients for service according to the days and hours listed in Exhibit B of this Agreement. Draeger must approve any permanent change in days or hours of service that would decrease the availability of service.

h.  Requirement for Technician Certification. The parties agree that where states or local governmental authorities require the certification of interlock service technicians or service facilities, the responsibility and any cost for obtaining such certification shall rest with the DASP.

i.  Cost Collection. DASP shall collect and remit to the appropriate government authorities all taxes or fees required for their program of service work in accordance with applicable Federal, State and Local laws or regulations. DASP shall make available annually to Draeger any and all documentation regarding payment of applicable taxes and/or fees required collected and/or paid under this section.

j.  DASP Compensation/ Fees from Draeger Clients. DASP may charge and retain other fees due from Draeger Clients. Such fees may include, but not be limited to, "installation fees", "de-installation fees", "change vehicle fees", "late appointment fees", "road service fees", "violation reset fees", or other reasonable fees assessed by the DASP. DASP will provide notification to Draeger when making changes to DASP's standard fees outlined in Exhibit C.

k.  Service Fees and Fee Collection. DASP shall be solely responsible for the collection of any and all fees, taxes, filing fees (if any are applicable) and any other costs that it is entitled to collect/charge, and will hold Draeger harmless for the collection of such fees.

l.  Draeger Clients Lease Fees, Loss/Damage Fees, Fee Collection, and Payments. DASP shall be responsible for the collection of all Clients lease fees, applicable tax, and loss/damage fees. DASP shall be provided a monthly statement of fees payable to Draeger, and shall be responsible for payment of all fees to Draeger regardless of whether DASP has collected applicable fees. Fees shall be in the following amounts:

1. Equipment lease: $27.00 per month for XT interlock devices and $27.00 per month for IL-920 interlock devices.
2. Tax: Pursuant to local tax regulations.
3. Terms: Net 30 days.

For payments more than 30 days past due, Draeger may place DASP's account on hold and may, in addition to any other remedies Draeger deems appropriate, including termination of this agreement, withholding shipments of new Devices, warranty repaired Devices, or supplies and accessories until the account is paid in full.

Draeger Safety Diagnostics, Inc.

m. <u>Replacement Costs</u>. The price payable by DASP to Draeger for lost, stolen or destroyed Devices shall be $975.00 per Device. The price for each lost, stolen or destroyed handset component of a Device shall be $825.00 per Device. The price for lost, stolen or destroyed [I/O] components of Devices shall be $150.00 per Device. Replacement fees shall be subject to reasonable modification from time to time, upon prior written notice, to reflect relevant market conditions. DASP must promptly notify Draeger in writing of any lost, stolen or destroyed components or Devices and shall be responsible for any costs and expenses resulting from or related to lost, stolen or damaged Devices.

n. <u>Lost or Stolen Systems</u>. In the event a Client does not report for calibration/monitoring service within the specified "grace period", DASP shall be responsible for reporting this to Draeger. Draeger will notify the governing authority of the Client's breach of contract. DASP will make reasonable efforts to recover Draeger property.

o. <u>Background Investigations & Duty to notify</u>. DASP represents, warrants and agrees that with regard to self, any employee, or any person providing ignition interlock service in any capacity on behalf of DASP, DASP shall report to Draeger any arrest, criminal complaint, conviction, or other official criminal proceeding that DASP becomes aware of, either directly or indirectly, that involves the use of alcohol or drugs, or is in any way related to the qualifications, function, and duties related to the installation and inspection of the Device. Failure to report such to Draeger within two (2) business days shall be grounds for immediate termination of this contract. DASP agrees that said obligation is a material term of this Agreement. DASP further agrees that with regard to self, any employee, or any person providing ignition interlock service in any capacity on behalf of DASP, DASP shall terminate the employment of any person providing ignition interlock service who is the subject of arrest, criminal complaint, conviction, or other official criminal proceeding that DASP becomes aware of, that involves the use of alcohol or drugs, or is in any way related to the qualifications, function, and duties related to the installation and inspection of the Device. DASP agrees and understands that if required by local regulations, background checks must be conducted on all staff as required by law, rules, or regulations. The cost for such investigation shall be the responsibility of the DASP.

5. <u>Obligations of Draeger</u>

a. <u>Marketing & Promotion</u>. Draeger shall assist in the marketing and promotion of the Draeger system to any and all judicial, governmental, corporate or private entities.

b. <u>Judicial & Governmental Liaison</u>. Draeger shall be responsible for all contact with judicial or governmental authorities with regards to required reporting. DASP shall refer all calls concerning reporting from such authorities to Draeger's designated employee. DASP is responsible to liaison with judicial and governmental authorities with regards to referrals.

c. <u>Requirement for Device Certification</u>. The parties agree that where states or local governmental authorities require the certification of ignition interlock devices, the responsibility and any cost for obtaining such certification shall rest with Draeger.

Draeger Safety Diagnostics, Inc.

d. <u>Equipment and Stock</u>. The following shall be provided to DASP by Draeger at no cost on an as-needed basis (as defined in paragraph 20. a.): program software and brochures. DASP shall be responsible for the purchase of consumable mouthpieces, approved alcohol simulator, and certified alcohol solution, such items to be purchased from Draeger at Draeger's list price less 15% plus shipping.

e. <u>Stand-By Inventory</u>. Draeger will provide stand-by inventory at no cost to DASP, excluding shipping costs, by direct shipment utilizing ground transportation. Stand-By Inventory shall be provided based on the following chart:

| # of Units | | Shelf Stock |
|---|---|---|
| 1 | - | 50 | 2 |
| 51 | - | 100 | 3 |
| 101 | - | 150 | 4 |
| 151 | - | 200 | 5 |
| 201 | - | 250 | 6 |
| 251 | - | 300 | 7 |
| 301 | - | 350 | 8 |
| 351 | - | 400 | 9 |
| 401 | + | | 10 |

f. <u>Initial Training Program</u>. As soon as possible following the execution of this Agreement, or at such other time as Draeger and DASP may agree, Draeger shall make available to DASP's key service personnel (maximum of six (6), such personnel at any one time), training, advice and guidance as Draeger deems necessary to be appropriate to allow for the proper training and instruction for installation and service of the Draeger Interlock device. Normal time required for such training is two to three days, but may take longer depending on the level of competence of the DASP personnel. Draeger shall provide such complementary training to DASP. Such training shall include installation, servicing, and electronic data collection of any Draeger device being used from time to time by DASP. Expenses for travel, room, and board associated with the above training will be borne by DASP.

g. <u>Continuing Training Program</u>. Draeger shall make available additional training courses for new employees assigned to this application, after the initial training for the persons described in subparagraph 'f', above, at the rate of $150.00 per day for each person (minimum of 2 persons required). Expenses for travel, room, and board associated with the above training will be borne by DASP. To the extent possible, Draeger will provide additional training materials and updates on manuals and software by way of disk, mail, or e-mail or by other suitable means, to allow DASP key service personnel to train DASP technicians in present or future devices, their service features, maintenance and their repair for non-warranty purposes. Draeger reserves the right to change the rate for charges for additional training if DASP requires additional course content in an amount reasonably calculated to fairly compensate Draeger for the additional course content.

h. <u>New and Updated Technology</u>. Draeger shall make available to DASP all new Draeger

Draeger Safety Diagnostics, Inc.

Interlock devices, information and technology as it becomes available. Both parties agree that the interlock technology will be changing rapidly and that staying abreast of those changes and offering up-to-date technology and software is important to maintaining a leadership position in the interlock industry.

i.   Product liability. Draeger will provide product liability insurance in the amount of at least that required by any state or interlock program and will provide to DASP proof that DASP and the respective state program is an additional insured under that policy as such programs are established.

j.   Warranty of Devices.   Draeger will provide warranty service for the devices except for misuse as defined in paragraph 21 of this Agreement. Warranty service shall include any service to parts or material of the device or the firmware that controls the device resulting from defective materials or workmanship by Draeger, or that can not be serviced in the field, including repairs to the sensor or sampling system, system circuit boards cases (except by misuse), or any components of the device. DASP shall return to Draeger all devices in need of warranty service.  The cost of shipping to Draeger's designated address shall be borne by Draeger. Draeger may, in its discretion, provide a new or refurbished interlock device that is compatible with the program in which the device is being serviced by DASP in place of the device that has been returned for warranty service. DASP shall provide to Draeger a written statement/ observation with each device returned (with an authorized RMA#) indicating the reason for the return, to assist Draeger in making the repairs to devices returned.

k.   Non-Warranty Repairs and Costs. DASP shall be required to pay Draeger for repair or inspection work required to be performed on devices due to the misuse, abuse, or neglect of devices by DASP.  For Non-warranty repairs Draeger shall invoice DASP and DASP shall pay Draeger $73.00 per hour for labor, plus costs for parts.

l.   Warranty Service.  If DASP is requested to retrieve a Device, or to provide remote (out of shop) warranty service for Draeger equipment, DASP must obtain prior approval from a designated Draeger employee. DASP shall provide an explanation of the reason for the need of service, estimate of time needed to provide service, and location of the service. Approved service shall be documented by DASP on the appropriate Draeger form and submitted by DASP to the designated Draeger employee.

m.   Device Certification.   Draeger shall provide, upon DASP's request, documentation confirming that Draeger Interlock devices meet the certification requirements of the jurisdiction in which DASP is authorized under this Agreement to perform services with respect to such devices.

n.   Service Support Materials and Software.  Draeger agrees that it shall provide DASP with all information about Draeger Interlock devices that Draeger deems necessary for performing the services DASP is obligated under the terms of this Agreement to provide. Any drawings, data, designs, software programs or other technical information supplied by Draeger in connection with this Agreement shall remain Draeger's property and shall at all times be held in confidence by DASP. Such materials and information shall be used only for purposes of allowing DASP to perform the services required under this Agreement, shall not be used for

Draeger Safety Diagnostics, Inc.

any other purposes, and shall not be reproduced or disclosed to others without Draeger's prior written consent. Upon termination of this Agreement, DASP shall not be authorized to use such materials and information and shall return to Draeger any and all originals and copies of such materials and information.

6. <u>Litigation Disclosure</u>. DASP and Draeger shall disclose to each other any litigation or investigations concerning ignition interlock service, whether prior or pending, or occurring in the future. Notice of such litigation or investigation shall be given by one party to the other within twenty (20) days of notification. Failure to so notify the other party of litigation or an investigation may be grounds for cancellation of this Agreement by either party.

7. <u>Change of Status</u>. Because both parties agree that it is important to allow the other party to know who to contact in the other organization at all times about any problems or issues that might arise from time to time in the event that there is any change in DASP directors, officers, management, DASP shall report such change, including all pertinent addresses, to Draeger within five (5) days of such change via phone/fax to be followed by written confirmation. Draeger shall have the right to conduct background checks on any person under this section, such checks may include, but not be limited to, criminal history, credit, financial, and/or driving history, as deemed appropriate by Draeger. Likewise, changes in Draeger Safety Diagnostics, Inc. directors, officers, or its corporate management or the account representative for the division shall be reported to DASP within five (5) days of such change via phone/fax to be followed by written confirmation. Failure to disclose such changes within the time period set forth above will be grounds for termination of this Agreement, if such failure causes any material loss to the parties entitled to the notice.

8. <u>Non-competition, Non-Disclosure</u>. DASP shall not, during the term of this Agreement, either directly or indirectly, on its own behalf or in the service or on behalf of others, engage in, contract for, or be involved in any business which is the same or essentially the same, or in any way competes with the Draeger Interlock device. DASP shall not use any manufacturer's device other than Draeger's during the term of this Agreement unless the same is canceled by either party as permitted in this Agreement. It is recognized by each party that during the course of the execution of this Agreement and the respective roles described in this Agreement, each party will come into possession of, or have knowledge of, software designs, hardware designs and other proprietary information of the other. Each party warrants and agrees that it will not disclose any such proprietary information of the other that it might come to have in its possession at any time from this date forward, and continuing to a period of 5 years after the termination of this Agreement. Upon termination of this Agreement, no party shall use the proprietary information of the other party unless expressly authorized to so under the terms of this Agreement.

9. <u>Status of the Parties</u>. The relationship created by this Agreement shall be that of DASP being authorized by Draeger to perform the services described herein for Draeger devices and the Clients leasing those devices. Neither party will bind the other to any agreements or representations without its expressed written approval. Nothing in this Agreement shall be construed so as to create any relationship other than that of a service provider of Draeger products.

DASP shall perform its duties hereunder as an independent contractor, and not as an employee,

Draeger Safety Diagnostics, Inc.

agent, or franchisee of Draeger. Neither DASP nor any agent or employee of DASP shall be or be deemed to be an agent, franchisee, or employee of Draeger; likewise, no agent or employee of Draeger shall be considered an agent, franchisee, or employee of DASP.

Nothing contained in this Agreement shall be construed as indicating that Draeger is taking responsibility (nor is Draeger responsible) for monitoring or supervising the installation or maintenance services rendered by DASP pursuant to this Agreement.

DASP acknowledges that DASP and its employees are not entitled to unemployment insurance benefits unless DASP or a third party provides such coverage and that Draeger does not pay for or otherwise provide such coverage. DASP shall have no authorization, express or implied, to bind Draeger to any Agreements, liability, or understanding, and shall not be authorized to make any representations on behalf of Draeger or to claim any affiliation whatsoever with Draeger except as expressly set forth herein. DASP shall provide and keep in force workers compensation and unemployment compensation insurance (and provide proof of insurance on a semi-annual basis) in the amounts required by law, and shall be solely responsible for the acts of DASP, its employees and agents.

10. Insurance. DASP shall, at its own cost and expense, purchase and maintain, continuously throughout the term hereof, the following insurance coverage, against damage or loss caused by DASP or its employees or agents:

   a. Commercial General Liability in no less than $1,000,000 per occurrence and $2,000,000 aggregate limit for Bodily injury and Property Damage or Garage Insurance in no less than $1,000,000 per occurrence and $2,000,000 aggregate limit for Bodily injury and Property Damage.

   b. Automobile Liability for Owned and Non-Owned automobiles as required by the respective states.

   c. Workers' Compensation Insurance and Unemployment Compensation Insurance, as required by the respective states, with respect to all DASP employees, officers, and owners.

   d. Proof of all Commercial General Liability or Garage Liability insurance required above to be provided and maintained by DASP hereunder shall be provided to Draeger within ten (10) days of the execution of this Agreement, certificates evidencing all insurance required under this section. All policies shall be endorsed to provide that they may not be terminated or canceled except upon thirty (30) days prior written notice by the insurer to Draeger. DASP must provide proof of such coverage to Draeger in the form of a certificate evidencing insurance coverage and showing Draeger as an additional insured.

11. Assignment. DASP shall not sell, assign, transfer, sub-license or encumber this Agreement or any right or interest of DASP herein, or suffer or permit any such sale, assignment, transfer, sub-license or encumbrance to occur by operation of law or otherwise, without the prior written consent of Draeger. Any violation by DASP of this section shall constitute a material breach of this Agreement and Draeger shall have the right to immediately terminate the Agreement upon written notice to DASP.

Draeger Safety Diagnostics, Inc.

12. Ownership of Interlock Devices and Client Leases. Every device provided by Draeger is owned by, and shall remain the sole and exclusive property of Draeger. Every Client "Equipment Lease Agreement" signed on behalf of Draeger is owned and shall remain the sole and exclusive property of Draeger. DASP shall not, directly or indirectly, encumber or otherwise impair Draeger's title to the device or Client Equipment Lease. Draeger warrants that it is not prohibited from delivering devices to DASP. Draeger further warrants that Draeger Safety Diagnostics, Inc., is a corporation in good standing.

13. Warranty. Draeger's warranties for any devices installed, serviced, maintained or repaired under this Agreement are specifically limited according to the terms of paragraph 5. j. of this Agreement. Further:

> Draeger shall not be liable for damage due to automobile collision, fire, misuse, abuse, or device tampering or for any other costs due to failures caused by failure to abide by the manufacturers' instructions on installation and use of the device, or by the improper installation or improper use of the devices. Draeger shall not be liable for any indirect, incidental, consequential or special damages from or occasioned by the devices, except as provided for by law in jurisdictions where such disclaimers are not valid.
>
> DRAEGER MAKES NO EXPRESS OR IMPLIED WARRANTIES WITH RESPECT TO THE INTERLOCK DEVICES OR THE TRAINING, PARTS OR SERVICES PROVIDED BY DRAEGER IN CONNECTION WITH THOSE DEVICES OTHER THAN THE WARRANTIES DESCRIBED HEREIN. DRAEGER EXPRESSLY DISCLAIMS ANY AND ALL OTHER WARRANTIES AND IN NO EVENT SHALL DRAEGER BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES. IN ADDITION, IN NO EVENT SHALL DRAEGER'S LIABILITY WITH RESPECT TO ANY CLAIM, WHETHER IN CONTRACT, TORT, OR OTHERWISE, FOR ANY LOSSES OR DAMAGES ARISING OUT OF OR IN CONNECTION WITH THE MANUFACTURE, DELIVERY, SALE, RESALE, OR OTHER USE OF ANY DRAEGER INTERLOCK DEVICE, TRAINING, PART OR SERVICE EXCEED THE PRICE PAID BY DASP FOR THE DEVICE, TRAINING, PART OR SERVICE GIVING RISE TO THE CLAIM.

14. Indemnification. DASP agrees to indemnify and to hold harmless Draeger, its officers, agents and employees, and their successors and assigns, in respect to all causes of action, claims, demands, liabilities, loss, damage, actions, litigation, or other expenses, including Attorney fees and costs, which may arise as a result of any action or omission by DASP or its officers, agents, or employees.

15. Arbitration. Any dispute arising under, out of, in connection with, or in relation to this Agreement, or any breach hereof, shall be determined and settled by arbitration held in Dallas, Texas, pursuant to the Commercial Arbitration Rules (including the Optional Rules for Emergency Measures of Protection) of the American Arbitration Association (AAA). The

Draeger Safety Diagnostics, Inc.

arbitration shall consist of one arbitrator. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

16. Notice. Any notice required or permitted by this Agreement shall be delivered in person or sent by facsimile transmission, with a confirmation copy sent by first class mail in the U.S. Mail, with sufficient postage attached. Such notice shall be effective upon personal delivery or upon facsimile transmission. All notices shall be addressed to the appropriate party as follows:

If to Draeger:

George Ballance, President and CEO
Draeger Safety Diagnostics, Inc.
4040 W. Royal Lane, Suite 136
Irving, TX  75063

If to DASP:

Paul Dewey, Owner
New Horizon Interlock, Inc.
29234 Lyon Oaks Drive
Wixom, MI 48393

or to such other person and address which either party might designate from time to time, in writing.

17. Confidentiality. DASP and Draeger acknowledge that each may come into contact with confidential information. The confidentiality of any information shall be respected, and no confidential information will be passed to any third party or used by DASP or Draeger in any way except as authorized by the State and by this Agreement, nor be retained in any files of DASP or Draeger. In addition, each party acknowledges that the other will come into possession of the technical or software protocols and product of the other party, and each agrees to keep such information confidential and not to use or to disseminate the information to any party without the written consent of the other party being first obtained. DASP will not disclose any item regarding the parties' business arrangement without the express written permission of Draeger, unless otherwise required by a court of competent jurisdiction or by law.

18. Discrimination and Affirmative Action. Draeger is committed to a nondiscriminatory policy with regard to employees and applicants. These decisions are made without regard to race, color, religion, national origin, age, sex, veteran status, or physical or mental disability of an otherwise qualified person. All Draeger subcontractors or DASP's are required to comply with this same standard of commitment.

19. Governing Law; Jurisdiction.    This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Texas, without giving effect to principles of conflicts of law. Any disputes arising under this agreement are subject to binding arbitration through the American Arbitration Association or other mutually agreed nationally recognized arbitration

Draeger Safety Diagnostics, Inc.

service located in the State of Texas.  For the purpose of this provision, the arbitrator shall determine which, if any, party is deemed to be the prevailing party.

20. Miscellaneous.

   a.  Entire Agreement.  This instrument contains the entire Agreement of the parties and no representations, inducements, promises, or Agreements, oral or otherwise, not embodied herein shall be of any force and effect.

   b.  Amendments. This Agreement may not be amended or modified except by a writing signed by the parties hereto.

   c.  Invalidity. Should any part of this Agreement for any reason be declared invalid, such decision shall not affect, the validity of any remaining portion, which remaining portion shall remain in force and effect as if this Agreement had been executed with the invalid portion thereof eliminated.

   d.  Binding Effect. Except as this Agreement expressly provides to the contrary, this Agreement will inure to the benefit of and be binding upon the heirs and successors of the parties.

   e.  No Waiver. Any breach, default, or failure to perform any term or condition of this Agreement shall not be deemed waived or released by a party's silence, and any such waiver or release shall not be effective unless made in writing by an authorized representative of the party making the waiver. The waiver of any term or provision of this Agreement shall not constitute waiver of a future breach, default or failure to perform for the waived provision, unless expressly provided in the written waiver. The waiver of any term or provision of this Agreement shall not constitute waiver of any other term or provision of this Agreement not specifically addressed in the written waiver.

   f.  Section Headings.     The section headings or titles are for convenience only and shall have no substantive effect in the interpretation of this Agreement.

   g.  Use of Name:  Draeger grants the DASP a personal consent to use the marks DRAEGER and DRAEGER INTERLOCK in a factual way in advertising materials to the extent necessary to indicate that DASP is an authorized DASP for the Draeger Interlock product(s) at addresses listed in Exhibit B of this Agreement.  All such materials must clearly display the following trademark notice: "DRAEGER and DRAEGER INTERLOCK° are trademarks owned by Draeger Safety, Inc. and are used by permission."  DASP shall not use DRAEGER or DRAEGER INTERLOCK° in a trademark fashion without the prior, written permission of Draeger.  DASP shall not use any other mark(s) in connection with promoting the Draeger products or the services described in this Agreement without the prior, written permission of Draeger; for the sake of clarity, DASP's use of its own trade name shall not be considered to violate this restriction.

   h.  Force Majeure.  Neither DASP nor Draeger shall be liable to the other for any delay in, or failure of performance of, any covenant or promise contained in this contract, nor shall any delay or failure constitute default or give rise to any liability for damages if, and only to the

Draeger Safety Diagnostics, Inc.

extent that, such delay or failure is caused by force majeure. As used in this Agreement, 'force majeure' means fire, explosion, action of the elements not already considered by the applicable state certification process as it applies to ignition interlock devices (it being the intent to require the devices to operate as required under the applicable state certification and device operating protocols notwithstanding the elements to which the device might be subjected), strike, interruption of transportation, rationing, court action, illegality, or any other cause which is beyond the control of the party affected and which, by the exercise of reasonable diligence, could not have been prevented by the party affected.

i.  <u>Authority to Execute</u>. Each party hereby warrants and assures and guarantees to the other party that it possesses the legal authority to enter into this Agreement. The persons signing this Agreement for each party warrant and represents that they have full right, power and authority to execute this Agreement on behalf of his respective party.

21. <u>Definitions</u>.  In this Agreement, these terms will have the, following definitions:

a.  "As needed" shall mean equipment of a proprietary or exclusive use nature needed by DASP technicians to service, install, or otherwise facilitate the administration of each service facility, or by other DASP management personnel, as agreed upon by both parties.

b.  Certification or "certified," or "certified device" means that the manufacturer or the DASP of the device has actually received written permission, according to law or rules and regulations, to distribute, install, service, and otherwise make available a device to the public, and that this written permission has been received from that agency in any respective State that is charged with the responsibility for granting or denying such permission or certification.

c.  "Customer" is defined as any state or federal authority in cases wherein Draeger is a provider of interlock services under a contract.

d.  "Client" is defined as any individual person using Draeger interlock devices or interlock services.

e.  "Establish interlock facilities," or "establishes an interlock service location" will mean that the DASP has actually opened a place of business with the equipment and personnel required to staff and maintain the same.

f.  "Misuse" shall mean damage or loss resulting from misuse, abuse, accident, neglect, improper installation, improper maintenance or use, or mechanical, electrical, vehicle fire or environmental circumstances such as corrosion to parts of the device.

g.  "Written notice" may consist of a writing that is mailed, first class mail, postage prepaid, a writing that is sent by facsimile, or a writing that is hand-delivered writing.

Draeger Safety Diagnostics, Inc.

IN WITNESS WHEREOF, the parties have entered into this Agreement this 29th day of May 2008.

DRAEGER SAFETY DIAGNOSTICS, INC.

By: _____
    George Ballance, President and CEO

NEW HORIZON INTERLOCK, INC.

By: _____
    Paul Dewey, Owner

Draeger Safety Diagnostics, Inc.

## ATTACHMENTS TO DRAEGER AUTHORIZED SERVICE PROVIDER
## AGREEMENT BETWEEN DRAEGER SAFETY DIAGNOSTICS, INC.
## AND NEW HORIZON INTERLOCK, INC.

### Exhibit A – Preventive Maintenance

- verify wire harness length prior to installation - minimum length 14"
- verify wire harness length after removal - minimum length 14"
- clean and inspect handset and control box prior to installation
- clean and inspect handset and control box after removal
- send all equipment out of specification back to Draeger for repair

### Exhibit B – Service Locations and Hours of Operation

The service address(s) including days and hours of available service in this Agreement are as follows:
Service Locations:  Multiple throughout Michigan and Wisconsin.
Main location located at:
29234 Lyon Oaks Drive
Wixom, MI 48393

Hours of Operation:

Monday:  Varies by location.

Tuesday:  Varies by location.

Wednesday:  Varies by location.

Thursday:  Varies by location.

Friday:  Varies by location.

Saturday:  Varies by location.

Sunday:  Varies by location.

### Exhibit C – Standard Fees and Charges

Installation:

De-Installation:

Change Vehicle:

Calibration/Monitor Check:

Violation Re-Set:

Road Service:

Missed Appointment:

Bad Check:

Multiple vehicles:

Economic Hardship:

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

Please visit our website at www.adr.org if you
would like to file this case online. AAA Case Filing
Services can be reached at 877-495-4185.

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

*MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box. ☐*
*There is no additional administrative fee for this service.*

| Name of Respondent | | | Name of Representative (if known) | | |
|---|---|---|---|---|---|
| New Horizon Interlock Inc. | | | William Foren | | |
| **Address** | | | **Name of Firm (if applicable)** | | |
| 29234 Lyon Oaks Drive | | | Foren & Glaser | | |
| | | | **Representative's Address** | | |
| | | | 53435 Grand River Avenue | | |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Wixom | MI | 48393- | New Hudson | MI | 48165- |
| **Phone No.** | | **Fax No.** | **Phone No.** | | **Fax No.** |
| 800-597-5054/248-446-920 | | 248-446-9201 | 248-486-5115 | | 248-486-5119 |
| **Email Address:** | | | **Email Address:** | | |
| paul@interlockinfo.com | | | | | |

The named claimant, a party to an arbitration agreement dated **May 29, 2008**, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

**THE NATURE OF THE DISPUTE**
Respondent breached various provisions of the Draeger Authorized Service Provider Agreement dated May 29, 2008 and amended on May, 29, 2010 (the "Agreement") by failing to pay lease fees, failing to return Drager client records, electronic data and other reports, removing Draeger owned equipment from client vehicles and disclosing confidential information to third parties. The Agreement is attached as Exhibit A.

| Dollar Amount of Claim $250,000.00 | Other Relief Sought:  ☒ Attorneys Fees    ☒ Interest |
|---|---|
| | ☒ Arbitration Costs  ☐ Punitive/ Exemplary  ☐ Other _____ |

Amount Enclosed $ 2,800.00     In accordance with Fee Schedule:  ☐Flexible Fee Schedule  ☒Standard Fee Schedule

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
An attorney with commercial law experience.

Hearing locale Dallas, Texas _____ (check one) ☐ Requested by Claimant  ☒ Locale provision included in the contract

| Estimated time needed for hearings overall: | Type of Business:  Claimant ___ Device Manufacturer |
|---|---|
| _____ hours or __1.00__ days | Respondent Distributor/Service Provider |

Is this a dispute between a business and a consumer? ☐Yes ☒ No  Does this dispute arise out of an employment relationship? ☐ Yes ☒ No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐Less than $100,000 ☐ $100,000 - $250,000 ☐ Over $250,000

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Signature (may be signed by a representative)       Date: | Name of Representative |
|---|---|
| *[signature]*          1/10/2011 | A. Christopher Young & Jennifer Lambert |
| **Name of Claimant** | **Name of Firm (if applicable)** |
| Draeger Safety Diagnostics, Inc. | Pepper Hamilton LLP |
| **Address (to be used in connection with this case)** | **Representative's Address** |
| 3135 Quarry Road | 3000 Two Logan Square, 18th & Arch Streets |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Telford | PA | 18969- | Philadelphia | PA | 19103- |
| **Phone No.** | | **Fax No.** | **Phone No.** | | **Fax No.** |
| 215-660-2263 | | 215-660-2742 | 215-981-4190/215-981-4277 | | 215-981-4750 |
| **Email Address:** | | | **Email Address:** | | |
| bonnie.chong@draeger.com | | | youngac@pepperlaw.com / lambertj@pepperlaw.com | | |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043.  Send the original Demand to the Respondent.

Draeger Safety Diagnostics, Inc.



# Draeger Authorized Service Provider
# Agreement

This Agreement is entered into by Draeger Safety Diagnostics, Inc., (hereinafter referred to as "Draeger"), whose address is 4040 W. Royal Lane, Suite 136, Irving, TX 75063 and **New Horizon Interlock, Inc.,** (hereinafter referred to as "DASP"), whose address is 29234 Lyon Oaks Drive, Wixom, MI 48393.

*Whereas,* Draeger is the manufacturer and Lessor of Draeger products (hereinafter known as "device(s)," "Draeger Interlock devices," "interlock[s]," or "ignition interlock[s]") designed for use in motor vehicles. Draeger is responsible for all service, maintenance and upgrade described in this Agreement (including firmware, software associated with the performance of the ignition interlock device which is the subject of this Agreement and hardware repairs and changes that are required to meet the need of the market and the customers and Clients therein from time to time) and continuing research, design, and development of such equipment.

*Whereas,* Draeger shall retain responsibility for reporting all Client compliance and non-compliance to the appropriate governing agency. In addition, Draeger shall strive to increase utilization of ignition interlock technology through marketing and business development efforts.

*Whereas,* Draeger, as manufacturer and Lessor of such devices, seeks an authorized Service Provider (hereinafter referred to as the "DASP") to provide field services consistent with Draeger standards of quality that include (but are not limited to) the installation, periodic calibration, and authorized removal of the Draeger Interlock device(s), and any future ignition interlock device(s) that might be developed by Draeger as part of continued responsibilities that it has for research and development of newer interlock devices (the "devices").

*Whereas,* DASP desires to be authorized to install, inspect, calibrate, and de-install the Draeger Interlock device(s) upon the terms and conditions set forth below.

**NOW THEREFORE, THE PREMISES CONSIDERED THE PARTIES AGREE AS FOLLOWS:**

1. Appointment as DASP. Draeger hereby appoints DASP to be Draeger's authorized Service Provider to Draeger Clients (equipment Lessees) in order to provide the services listed herein at the address or addresses listed in Exhibit A. DASP agrees to abide by the terms and conditions as set forth herein, assure that all service technicians it employs for the purposes of installing and maintaining Draeger Interlock devices are trained to Draeger standards, and provide the following services on such devices:

    a. installs/de-installs the devices as required on Draeger's Clients automobiles or other means of conveyance, as well as safety sensitive workplaces that might require the use of a device, and

Draeger Safety Diagnostics, Inc.

    b.  provides calibration services of the devices as required by such equipment or by agreement with Judicial or Governmental agencies, and

    c.  collects electronic data from the device and Client program information to be transferred to Draeger at times and by means designated by Draeger. Draeger shall retain responsibility for dissemination of Client data to appropriate authorities, and

    d.  is responsible for the cost and expense to establish and maintain DASP facilities and trained service technicians.

2.  <u>Term.</u> The term of this Agreement shall commence on July 1, 2008, and continue through June 30, 2010, unless sooner terminated pursuant to Paragraph 3. This Agreement shall automatically renew for an additional 1-year increment thereafter unless either party gives 30 days written notice to the other of its intent not to renew.

3.  <u>Termination by Draeger or DASP.</u>

    a.  This Agreement may be terminated prior to the expiration of its term by Draeger or DASP upon the occurrence of any of the following events, each of which will be deemed a default hereunder.

        i.  Immediately, upon any material breach of this Agreement (a material breach is defined as (a) a failure to timely pay invoices or meet other payment obligations; (b) a breach of Paragraph 4, 7, 8, 17, or 20(g) of this Agreement; (c) any failure to comply with any provision of this Agreement that is not cured within the cure period set forth in subsection 3.a.ii. below; or (d) any act found to involve fraud or misrepresentation by a party or by any conviction of a criminal act in any state by the other party); or

        ii.  Upon thirty (30) days written notice to DASP of any breach or failure of performance by DASP of any provision of this Agreement, or failure to perform an obligation within the time period prescribed which is not cured within a thirty (30) day period following the notice of breach or failure of performance; or

        iii.  Immediately, if DASP or Draeger becomes insolvent or makes a general assignment for the benefit of creditors, or to an agent authorized to liquidate its property or assets; or becomes bankrupt, or voluntarily files a petition in bankruptcy, or has a voluntary petition in bankruptcy filed against it; or suffers the appointment of a receiver of any of its assets and property; or upon the dissolution or liquidation of DASP or Draeger; or

        iv.  Immediately, if a governmental or judicial entity prohibits interlock Clients from obtaining service from DASP; or

        v.  Immediately, if there is consequential change in the number of days or hours available to Draeger Clients for service as recorded in Exhibit B of this Agreement.

Initials _____  _____                5/29/2008               Page 2 of 15

Draeger Safety Diagnostics, Inc.

b.  In the event of such cancellation, termination or expiration of this Agreement, or in the event that Draeger or DASP provides written notice of a breach of this Agreement, DASP shall not remove any device from a Client vehicle without written approval from Draeger. Further, should DASP be directed by Draeger or any legislative or other entity to which Draeger is contractually obligated to provide interlock services, to remove installed interlocks, such removal costs will be the responsibility of DASP.

c.  Within five (5) days of cancellation, termination or expiration of this Agreement, DASP shall return to Draeger all un-installed rented/leased devices and equipment in its possession, and turn over all records, electronic data, and reports relating to this Agreement. The parties expressly acknowledge and agree that such records, electronic data, and reports relating to the services provided pursuant to this Agreement are the property of Draeger; provided, however, that DASP may retain copies of such records, electronic data, and reports for the purpose of complying with statutory data or records retention obligations or for prosecuting or defending non-payment, default, or other claims relating to DASP services.

4.  Scope of Services by DASP. DASP will provide service at the address or addresses listed in Exhibit A. DASP will collect and transfer electronic records to Draeger as required by the respective referring agencies.

a.  Good and Workmanlike Manner. DASP shall perform all installations, calibrations, services, maintenance, repairs, and removals, under this Agreement in a good and workmanlike manner.

b.  Maintenance. DASP shall perform preventive maintenance not otherwise covered by Warranties on the devices to keep the devices in good working order (defined as meeting or exceeding Draeger's Quality Assurance Program for all interlock service providers), and shall provide all labor, tools and equipment required to correct any routine, non-warranty problem with the device. Draeger's current Preventive Maintenance Schedule is attached hereto as Exhibit B.

c.  Routine Records. DASP shall transmit to Draeger electronic Client records including device data, according to the terms and conditions specified by Draeger or the respective state administrative or judicial programs. Draeger shall be responsible for providing required reports and information to governing authorities.

d.  Phone and Internet Service. DASP shall provide phone and/or Internet service to adequately facilitate day-to-day operations, or as specifically outlined by a state or jurisdiction, continuously throughout the life of this Agreement. Governmentally required toll-free phone service that might be required by such authorities shall be provided by Draeger.

e.  Service Response. DASP must respond to all referrals by Draeger or any Jurisdiction to potential Clients within 48 hours of notification thereof. DASP must as soon as practicable provide maintenance service for Devices in the event that a Device calls for "SERVICE REQUIRED" or is malfunctioning. DASP must use reasonable efforts to prevent a Client from operating a motor vehicle without a functioning Device. In the event that a motor

Initials _____  _____                    5/29/2008                         Page 3 of 15

Draeger Safety Diagnostics, Inc.

vehicle has been driven by a Client without an operating Device, DASP must notify Draeger immediately. Draeger shall be responsible for notifying the proper authorities as required.

f. <u>Service Accessibility</u>. Work hours expended and the number of locations and technicians employed to provide services must be sufficient to meet or exceed each Jurisdiction's applicable requirements.

g. <u>Service Days and Hours</u>. DASP service location or locations shall be open and available to Draeger Clients for service according to the days and hours listed in Exhibit B of this Agreement. Draeger must approve any permanent change in days or hours of service that would decrease the availability of service.

h. <u>Requirement for Technician Certification</u>. The parties agree that where states or local governmental authorities require the certification of interlock service technicians or service facilities, the responsibility and any cost for obtaining such certification shall rest with the DASP.

i. <u>Cost Collection</u>. DASP shall collect and remit to the appropriate government authorities all taxes or fees required for their program of service work in accordance with applicable Federal, State and Local laws or regulations. DASP shall make available annually to Draeger any and all documentation regarding payment of applicable taxes and/or fees required collected and/or paid under this section.

j. <u>DASP Compensation/ Fees from Draeger Clients</u>. DASP may charge and retain other fees due from Draeger Clients. Such fees may include, but not be limited to, "installation fees", "de-installation fees", "change vehicle fees", "late appointment fees", "road service fees", "violation reset fees", or other reasonable fees assessed by the DASP. DASP will provide notification to Draeger when making changes to DASP's standard fees outlined in Exhibit C.

k. <u>Service Fees and Fee Collection</u>. DASP shall be solely responsible for the collection of any and all fees, taxes, filing fees (if any are applicable) and any other costs that it is entitled to collect/charge, and will hold Draeger harmless for the collection of such fees.

l. <u>Draeger Clients Lease Fees, Loss/Damage Fees, Fee Collection, and Payments</u>. DASP shall be responsible for the collection of all Clients lease fees, applicable tax, and loss/damage fees. DASP shall be provided a monthly statement of fees payable to Draeger, and shall be responsible for payment of all fees to Draeger regardless of whether DASP has collected applicable fees. Fees shall be in the following amounts:

  1. Equipment lease: $27.00 per month for XT interlock devices and $27.00 per month for IL-920 interlock devices.
  2. Tax: Pursuant to local tax regulations.
  3. Terms: Net 30 days.

For payments more than 30 days past due, Draeger may place DASP's account on hold and may, in addition to any other remedies Draeger deems appropriate, including termination of this agreement, withholding shipments of new Devices, warranty repaired Devices, or supplies and accessories until the account is paid in full.

Draeger Safety Diagnostics, Inc.

m. <u>Replacement Costs</u>. The price payable by DASP to Draeger for lost, stolen or destroyed Devices shall be $975.00 per Device. The price for each lost, stolen or destroyed handset component of a Device shall be $825.00 per Device. The price for lost, stolen or destroyed [I/O] components of Devices shall be $150.00 per Device. Replacement fees shall be subject to reasonable modification from time to time, upon prior written notice, to reflect relevant market conditions. DASP must promptly notify Draeger in writing of any lost, stolen or destroyed components or Devices and shall be responsible for any costs and expenses resulting from or related to lost, stolen or damaged Devices.

n. <u>Lost or Stolen Systems</u>. In the event a Client does not report for calibration/monitoring service within the specified "grace period", DASP shall be responsible for reporting this to Draeger. Draeger will notify the governing authority of the Client's breach of contract. DASP will make reasonable efforts to recover Draeger property.

o. <u>Background Investigations & Duty to notify</u>. DASP represents, warrants and agrees that with regard to self, any employee, or any person providing ignition interlock service in any capacity on behalf of DASP, DASP shall report to Draeger any arrest, criminal complaint, conviction, or other official criminal proceeding that DASP becomes aware of, either directly or indirectly, that involves the use of alcohol or drugs, or is in any way related to the qualifications, function, and duties related to the installation and inspection of the Device. Failure to report such to Draeger within two (2) business days shall be grounds for immediate termination of this contract. DASP agrees that said obligation is a material term of this Agreement. DASP further agrees that with regard to self, any employee, or any person providing ignition interlock service in any capacity on behalf of DASP, DASP shall terminate the employment of any person providing ignition interlock service who is the subject of arrest, criminal complaint, conviction, or other official criminal proceeding that DASP becomes aware of, that involves the use of alcohol or drugs, or is in any way related to the qualifications, function, and duties related to the installation and inspection of the Device. DASP agrees and understands that if required by local regulations, background checks must be conducted on all staff as required by law, rules, or regulations. The cost for such investigation shall be the responsibility of the DASP.

5. <u>Obligations of Draeger</u>

a. <u>Marketing & Promotion</u>. Draeger shall assist in the marketing and promotion of the Draeger system to any and all judicial, governmental, corporate or private entities.

b. <u>Judicial & Governmental Liaison</u>. Draeger shall be responsible for all contact with judicial or governmental authorities with regards to required reporting. Draeger shall refer all calls concerning reporting from such authorities to Draeger's designated employee. DASP is responsible to liaison with judicial and governmental authorities with regards to referrals.

c. <u>Requirement for Device Certification</u>. The parties agree that where states or local governmental authorities require the certification of ignition interlock devices, the responsibility and any cost for obtaining such certification shall rest with Draeger.

Draeger Safety Diagnostics, Inc.

d. <u>Equipment and Stock</u>. The following shall be provided to DASP by Draeger at no cost on an as-needed basis (as defined in paragraph 20. a.): program software and brochures. DASP shall be responsible for the purchase of consumable mouthpieces, approved alcohol simulator, and certified alcohol solution, such items to be purchased from Draeger at Draeger's list price less 15% plus shipping.

e. <u>Stand-By Inventory</u>. Draeger will provide stand-by inventory at no cost to DASP, excluding shipping costs, by direct shipment utilizing ground transportation. Stand-By Inventory shall be provided based on the following chart:

| # of Units | | | Shelf Stock |
|---|---|---|---|
| 1 | - | 50 | 2 |
| 51 | - | 100 | 3 |
| 101 | - | 150 | 4 |
| 151 | - | 200 | 5 |
| 201 | - | 250 | 6 |
| 251 | - | 300 | 7 |
| 301 | - | 350 | 8 |
| 351 | - | 400 | 9 |
| 401 | + | | 10 |

f. <u>Initial Training Program</u>. As soon as possible following the execution of this Agreement, or at such other time as Draeger and DASP may agree, Draeger shall make available to DASP's key service personnel (maximum of six (6), such personnel at any one time), training, advice and guidance as Draeger deems necessary to be appropriate to allow for the proper training and instruction for installation and service of the Draeger Interlock device. Normal time required for such training is two to three days, but may take longer depending on the level of competence of the DASP personnel. Draeger shall provide such complementary training to DASP. Such training shall include installation, servicing, and electronic data collection of any Draeger device being used from time to time by DASP. Expenses for travel, room, and board associated with the above training will be borne by DASP.

g. <u>Continuing Training Program</u>. Draeger shall make available additional training courses for new employees assigned to this application, after the initial training for the persons described in subparagraph 'f', above, at the rate of $150.00 per day for each person (minimum of 2 persons required). Expenses for travel, room, and board associated with the above training will be borne by DASP. To the extent possible, Draeger will provide additional training materials and updates on manuals and software by way of disk, mail, or e-mail or by other suitable means, to allow DASP key service personnel to train DASP technicians in present or future devices, their service features, maintenance and their repair for non-warranty purposes. Draeger reserves the right to change the rate for charges for additional training if DASP requires additional course content in an amount reasonably calculated to fairly compensate Draeger for the additional course content.

h. <u>New and Updated Technology</u>. Draeger shall make available to DASP all new Draeger

Draeger Safety Diagnostics, Inc.

Interlock devices, information and technology as it becomes available. Both parties agree that the interlock technology will be changing rapidly and that staying abreast of those changes and offering up-to-date technology and software is important to maintaining a leadership position in the interlock industry.

i. <u>Product liability</u>. Draeger will provide product liability insurance in the amount of at least that required by any state or interlock program and will provide to DASP proof that DASP and the respective state program is an additional insured under that policy as such programs are established.

j. <u>Warranty of Devices</u>.  Draeger will provide warranty service for the devices except for misuse as defined in paragraph 21 of this Agreement. Warranty service shall include any service to parts or material of the device or the firmware that controls the device resulting from defective materials or workmanship by Draeger, or that can not be serviced in the field, including repairs to the sensor or sampling system, system circuit boards cases (except by misuse), or any components of the device. DASP shall return to Draeger all devices in need of warranty service.  The cost of shipping to Draeger's designated address shall be borne by Draeger.  Draeger may, in its discretion, provide a new or refurbished interlock device that is compatible with the program in which the device is being serviced by DASP in place of the device that has been returned for warranty service. DASP shall provide to Draeger a written statement/ observation with each device returned (with an authorized RMA#) indicating the reason for the return, to assist Draeger in making the repairs to devices returned.

k. <u>Non-Warranty Repairs and Costs</u>. DASP shall be required to pay Draeger for repair or inspection work required to be performed on devices due to the misuse, abuse, or neglect of devices by DASP.  For Non-warranty repairs Draeger shall invoice DASP and DASP shall pay Draeger $73.00 per hour for labor, plus costs for parts.

l. <u>Warranty Service</u>.  If DASP is requested to retrieve a Device, or to provide remote (out of shop) warranty service for Draeger equipment, DASP must obtain prior approval from a designated Draeger employee. DASP shall provide an explanation of the reason for the need of service, estimate of time needed to provide service, and location of the service. Approved service shall be documented by DASP on the appropriate Draeger form and submitted by DASP to the designated Draeger employee.

m. <u>Device Certification</u>.   Draeger shall provide, upon DASP's request, documentation confirming that Draeger Interlock devices meet the certification requirements of the jurisdiction in which DASP is authorized under this Agreement to perform services with respect to such devices.

n. <u>Service Support Materials and Software</u>. Draeger agrees that it shall provide DASP with all information about Draeger Interlock devices that Draeger deems necessary for performing the services DASP is obligated under the terms of this Agreement to provide. Any drawings, data, designs, software programs or other technical information supplied by Draeger in connection with this Agreement shall remain Draeger's property and shall at all times be held in confidence by DASP.  Such materials and information shall be used only for purposes of allowing DASP to perform the services required under this Agreement, shall not be used for

Draeger Safety Diagnostics, Inc.

any other purposes, and shall not be reproduced or disclosed to others without Draeger's prior written consent. Upon termination of this Agreement, DASP shall not be authorized to use such materials and information and shall return to Draeger any and all originals and copies of such materials and information.

6. Litigation Disclosure. DASP and Draeger shall disclose to each other any litigation or investigations concerning ignition interlock service, whether prior or pending, or occurring in the future. Notice of such litigation or investigation shall be given by one party to the other within twenty (20) days of notification. Failure to so notify the other party of litigation or an investigation may be grounds for cancellation of this Agreement by either party.

7. Change of Status. Because both parties agree that it is important to allow the other party to know who to contact in the other organization at all times about any problems or issues that might arise from time to time in the event that there is any change in DASP directors, officers, management, DASP shall report such change, including all pertinent addresses, to Draeger within five (5) days of such change via phone/fax to be followed by written confirmation. Draeger shall have the right to conduct background checks on any person under this section, such checks may include, but not be limited to, criminal history, credit, financial, and/or driving history, as deemed appropriate by Draeger. Likewise, changes in Draeger Safety Diagnostics, Inc. directors, officers, or its corporate management or the account representative for the division shall be reported to DASP within five (5) days of such change via phone/fax to be followed by written confirmation. Failure to disclose such changes within the time period set forth above will be grounds for termination of this Agreement, if such failure causes any material loss to the parties entitled to the notice.

8. Non-competition, Non-Disclosure. DASP shall not, during the term of this Agreement, either directly or indirectly, on its own behalf or in the service or on behalf of others, engage in, contract for, or be involved in any business which is the same or essentially the same, or in any way competes with the Draeger Interlock device. DASP shall not use any manufacturer's device other than Draeger's during the term of this Agreement unless the same is canceled by either party as permitted in this Agreement. It is recognized by each party that during the course of the execution of this Agreement and the respective roles described in this Agreement, each party will come into possession of, or have knowledge of, software designs, hardware designs and other proprietary information of the other. Each party warrants and agrees that it will not disclose any such proprietary information of the other that it might come to have in its possession at any time from this date forward, and continuing for a period of 5 years after the termination of this Agreement. Upon termination of this Agreement, no party shall use the proprietary information of the other party unless expressly authorized to so under the terms of this Agreement.

9. Status of the Parties. The relationship created by this Agreement shall be that of DASP being authorized by Draeger to perform the services described herein for Draeger devices and the Clients leasing those devices. Neither party will bind the other to any agreements or representations without its expressed written approval. Nothing in this Agreement shall be construed so as to create any relationship other than that of a service provider of Draeger products.

DASP shall perform its duties hereunder as an independent contractor, and not as an employee,

Initials _____     5/29/2008     Page 8 of 15

Draeger Safety Diagnostics, Inc.

agent, or franchisee of Draeger. Neither DASP nor any agent or employee of DASP shall be or be deemed to be an agent, franchisee, or employee of Draeger; likewise, no agent or employee of Draeger shall be considered an agent, franchisee, or employee of DASP.

Nothing contained in this Agreement shall be construed as indicating that Draeger is taking responsibility (nor is Draeger responsible) for monitoring or supervising the installation or maintenance services rendered by DASP pursuant to this Agreement.

DASP acknowledges that DASP and its employees are not entitled to unemployment insurance benefits unless DASP or a third party provides such coverage and that Draeger does not pay for or otherwise provide such coverage. DASP shall have no authorization, express or implied, to bind Draeger to any Agreements, liability, or understanding, and shall not be authorized to make any representations on behalf of Draeger or to claim any affiliation whatsoever with Draeger except as expressly set forth herein.   DASP shall provide and keep in force workers compensation and unemployment compensation insurance (and provide proof of insurance on a semi-annual basis) in the amounts required by law, and shall be solely responsible for the acts of DASP, its employees and agents.

10. Insurance.  DASP shall, at its own cost and expense, purchase and maintain, continuously throughout the term hereof, the following insurance coverage, against damage or loss caused by DASP or its employees or agents:

    a.  Commercial General Liability in no less than $1,000,000 per occurrence and $2,000,000 aggregate limit for Bodily injury and Property Damage or Garage Insurance in no less than $1,000,000 per occurrence and $2,000,000 aggregate limit for Bodily injury and Property Damage.

    b.  Automobile Liability for Owned and Non-Owned automobiles as required by the respective states.

    c.  Workers' Compensation Insurance and Unemployment Compensation Insurance, as required by the respective states, with respect to all DASP employees, officers, and owners.

    d.  Proof of all Commercial General Liability or Garage Liability insurance required above to be provided and maintained by DASP hereunder shall be provided to Draeger within ten (10) days of the execution of this Agreement, certificates evidencing all insurance required under this section. All policies shall be endorsed to provide that they may not be terminated or canceled except upon thirty (30) days prior written notice by the insurer to Draeger. DASP must provide proof of such coverage to Draeger in the form of a certificate evidencing insurance coverage and showing Draeger as an additional insured.

11. Assignment. DASP shall not sell, assign, transfer, sub-license or encumber this Agreement or any right or interest of DASP herein, or suffer or permit any such sale, assignment, transfer, sub-license or encumbrance to occur by operation of law or otherwise, without the prior written consent of Draeger. Any violation by DASP of this section shall constitute a material breach of this Agreement and Draeger shall have the right to immediately terminate the Agreement upon written notice to DASP.

Draeger Safety Diagnostics, Inc.

12. <u>Ownership of Interlock Devices and Client Leases.</u> Every device provided by Draeger is owned by, and shall remain the sole and exclusive property of Draeger. Every Client "Equipment Lease Agreement" signed on behalf of Draeger is owned and shall remain the sole and exclusive property of Draeger. DASP shall not, directly or indirectly, encumber or otherwise impair Draeger's title to the device or Client Equipment Lease. Draeger warrants that it is not prohibited from delivering devices to DASP. Draeger further warrants that Draeger Safety Diagnostics, Inc., is a corporation in good standing.

13. <u>Warranty.</u> Draeger's warranties for any devices installed, serviced, maintained or repaired under this Agreement are specifically limited according to the terms of paragraph 5. j. of this Agreement. Further:

> Draeger shall not be liable for damage due to automobile collision, fire, misuse, abuse, or device tampering or for any other costs due to failures caused by failure to abide by the manufacturers' instructions on installation and use of the device, or by the improper installation or improper use of the devices. Draeger shall not be liable for any indirect, incidental, consequential or special damages from or occasioned by the devices, except as provided for by law in jurisdictions where such disclaimers are not valid.

> DRAEGER MAKES NO EXPRESS OR IMPLIED WARRANTIES WITH RESPECT TO THE INTERLOCK DEVICES OR THE TRAINING, PARTS OR SERVICES PROVIDED BY DRAEGER IN CONNECTION WITH THOSE DEVICES OTHER THAN THE WARRANTIES DESCRIBED HEREIN. DRAEGER EXPRESSLY DISCLAIMS ANY AND ALL OTHER WARRANTIES AND IN NO EVENT SHALL DRAEGER BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES. IN ADDITION, IN NO EVENT SHALL DRAEGER'S LIABILITY WITH RESPECT TO ANY CLAIM, WHETHER IN CONTRACT, TORT, OR OTHERWISE, FOR ANY LOSSES OR DAMAGES ARISING OUT OF OR IN CONNECTION WITH THE MANUFACTURE, DELIVERY, SALE, RESALE, OR OTHER USE OF ANY DRAEGER INTERLOCK DEVICE, TRAINING, PART OR SERVICE EXCEED THE PRICE PAID BY DASP FOR THE DEVICE, TRAINING, PART OR SERVICE GIVING RISE TO THE CLAIM.

14. <u>Indemnification.</u> DASP agrees to indemnify and to hold harmless Draeger, its officers, agents and employees, and their successors and assigns, in respect to all causes of action, claims, demands, liabilities, loss, damage, actions, litigation, or other expenses, including Attorney fees and costs, which may arise as a result of any action or omission by DASP or its officers, agents, or employees.

15. <u>Arbitration.</u> Any dispute arising under, out of, in connection with, or in relation to this Agreement, or any breach hereof, shall be determined and settled by arbitration held in Dallas, Texas, pursuant to the Commercial Arbitration Rules (including the Optional Rules for Emergency Measures of Protection) of the American Arbitration Association (AAA). The

Draeger Safety Diagnostics, Inc.

arbitration shall consist of one arbitrator. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

16. Notice. Any notice required or permitted by this Agreement shall be delivered in person or sent by facsimile transmission, with a confirmation copy sent by first class mail in the U.S. Mail, with sufficient postage attached. Such notice shall be effective upon personal delivery or upon facsimile transmission. All notices shall be addressed to the appropriate party as follows:

If to Draeger:

George Ballance, President and CEO
Draeger Safety Diagnostics, Inc.
4040 W. Royal Lane, Suite 136
Irving, TX 75063

If to DASP:

Paul Dewey, Owner
New Horizon Interlock, Inc.
29234 Lyon Oaks Drive
Wixom, MI 48393

or to such other person and address which either party might designate from time to time, in writing.

17. Confidentiality. DASP and Draeger acknowledge that each may come into contact with confidential information. The confidentiality of any information shall be respected, and no confidential information will be passed to any third party or used by DASP or Draeger in any way except as authorized by the State and by this Agreement, nor be retained in any files of DASP or Draeger. In addition, each party acknowledges that the other will come into possession of the technical or software protocols and product of the other party, and each agrees to keep such information confidential and not to use or to disseminate the information to any party without the written consent of the other party being first obtained. DASP will not disclose any item regarding the parties' business arrangement without the express written permission of Draeger, unless otherwise required by a court of competent jurisdiction or by law.

18. Discrimination and Affirmative Action. Draeger is committed to a nondiscriminatory policy with regard to employees and applicants. These decisions are made without regard to race, color, religion, national origin, age, sex, veteran status, or physical or mental disability of an otherwise qualified person. All Draeger subcontractors or DASP's are required to comply with this same standard of commitment.

19. Governing Law; Jurisdiction. This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Texas, without giving effect to principles of conflicts of law. Any disputes arising under this agreement are subject to binding arbitration through the American Arbitration Association or other mutually agreed nationally recognized arbitration

Draeger Safety Diagnostics, Inc.

service located in the State of Texas.  For the purpose of this provision, the arbitrator shall determine which, if any, party is deemed to be the prevailing party.

20. Miscellaneous.

   a.  Entire Agreement.  This instrument contains the entire Agreement of the parties and no representations, inducements, promises, or Agreements, oral or otherwise, not embodied herein shall be of any force and effect.

   b.  Amendments. This Agreement may not be amended or modified except by a writing signed by the parties hereto.

   c.  Invalidity. Should any part of this Agreement for any reason be declared invalid, such decision shall not affect, the validity of any remaining portion, which remaining portion shall remain in force and effect as if this Agreement had been executed with the invalid portion thereof eliminated.

   d.  Binding Effect. Except as this Agreement expressly provides to the contrary, this Agreement will inure to the benefit of and be binding upon the heirs and successors of the parties.

   e.  No Waiver. Any breach, default, or failure to perform any term or condition of this Agreement shall not be deemed waived or released by a party's silence, and any such waiver or release shall not be effective unless made in writing by an authorized representative of the party making the waiver. The waiver of any term or provision of this Agreement shall not constitute waiver of a future breach, default or failure to perform for the waived provision, unless expressly provided in the written waiver. The waiver of any term or provision of this Agreement shall not constitute waiver of any other term or provision of this Agreement not specifically addressed in the written waiver.

   f.  Section Headings.     The section headings or titles are for convenience only and shall have no substantive effect in the interpretation of this Agreement.

   g.  Use of Name:  Draeger grants the DASP a personal consent to use the marks DRAEGER and DRAEGER INTERLOCK in a factual way in advertising materials to the extent necessary to indicate that DASP is an authorized DASP for the Draeger Interlock product(s) at addresses listed in Exhibit B of this Agreement. All such materials must clearly display the following trademark notice: "DRAEGER and DRAEGER INTERLOCK® are trademarks owned by Draeger Safety, Inc. and are used by permission." DASP shall not use DRAEGER or DRAEGER INTERLOCK® in a trademark fashion without the prior, written permission of Draeger. DASP shall not use any other mark(s) in connection with promoting the Draeger products or the services described in this Agreement without the prior, written permission of Draeger; for the sake of clarity, DASP's use of its own trade name shall not be considered to violate this restriction.

   h.  Force Majeure. Neither DASP nor Draeger shall be liable to the other for any delay in, or failure of performance of, any covenant or promise contained in this contract, nor shall any delay or failure constitute default or give rise to any liability for damages if, and only to the

Draeger Safety Diagnostics, Inc.

extent that, such delay or failure is caused by force majeure. As used in this Agreement, 'force majeure' means fire, explosion, action of the elements not already considered by the applicable state certification process as it applies to ignition interlock devices (it being the intent to require the devices to operate as required under the applicable state certification and device operating protocols notwithstanding the elements to which the device might be subjected), strike, interruption of transportation, rationing, court action, illegality, or any other cause which is beyond the control of the party affected and which, by the exercise of reasonable diligence, could not have been prevented by the party affected.

i.   Authority to Execute. Each party hereby warrants and assures and guarantees to the other party that it possesses the legal authority to enter into this Agreement. The persons signing this Agreement for each party warrant and represents that they have full right, power and authority to execute this Agreement on behalf of his respective party.

21. Definitions.  In this Agreement, these terms will have the, following definitions:

a.   "As needed" shall mean equipment of a proprietary or exclusive use nature needed by DASP technicians to service, install, or otherwise facilitate the administration of each service facility, or by other DASP management personnel, as agreed upon by both parties.

b.   Certification or "certified." or "certified device" means that the manufacturer or the DASP of the device has actually received written permission, according to law or rules and regulations, to distribute, install, service, and otherwise make available a device to the public, and that this written permission has been received from that agency in any respective State that is charged with the responsibility for granting or denying such permission or certification.

c.   "Customer" is defined as any state or federal authority in cases wherein Draeger is a provider of interlock services under a contract.

d.   "Client" is defined as any individual person using Draeger interlock devices or interlock services.

e.   "Establish interlock facilities," or "establishes an interlock service location" will mean that the DASP has actually opened a place of business with the equipment and personnel required to staff and maintain the same.

f.   "Misuse" shall mean damage or loss resulting from misuse, abuse, accident, neglect, improper installation, improper maintenance or use, or mechanical, electrical, vehicle fire or environmental circumstances such as corrosion to parts of the device.

g.   "Written notice" may consist of a writing that is mailed, first class mail, postage prepaid, a writing that is sent by facsimile, or a writing that is hand-delivered writing.

Draeger Safety Diagnostics, Inc.

IN WITNESS WHEREOF, the parties have entered into this Agreement this 29th day of May 2008.

DRAEGER SAFETY DIAGNOSTICS, INC.

By: _____
George Ballance, President and CEO

NEW HORIZON INTERLOCK, INC.

By: _____
Paul Dewey, Owner

Draeger Safety Diagnostics, Inc.

## ATTACHMENTS TO DRAEGER AUTHORIZED SERVICE PROVIDER
## AGREEMENT BETWEEN DRAEGER SAFETY DIAGNOSTICS, INC.
## AND NEW HORIZON INTERLOCK, INC.

### Exhibit A – Preventive Maintenance

- verify wire harness length prior to installation - minimum length 14"
- verify wire harness length after removal - minimum length 14"
- clean and inspect handset and control box prior to installation
- clean and inspect handset and control box after removal
- send all equipment out of specification back to Draeger for repair

### Exhibit B – Service Locations and Hours of Operation

The service address(s) including days and hours of available service in this Agreement are as follows:
Service Locations:  Multiple throughout Michigan and Wisconsin.
Main location located at:
29234 Lyon Oaks Drive
Wixom, MI 48393

Hours of Operation:

Monday:  Varies by location.

Tuesday:  Varies by location.

Wednesday:  Varies by location.

Thursday:  Varies by location.

Friday:  Varies by location.

Saturday:  Varies by location.

Sunday:  Varies by location.

### Exhibit C – Standard Fees and Charges

Installation:

De-Installation:

Change Vehicle:

Calibration/Monitor Check:

Violation Re-Set:

Road Service:

Missed Appointment:

Bad Check:

Multiple vehicles:

Economic Hardship:

Initials *(signature)*          5/29/2008          Page 15 of 15

# AMENDMENT

This Amendment (this "Amendment") is made part of and amends that certain Draeger Authorized Service Provider Agreement dated May 29, 2008 (the "Agreement") by and between Draeger Safety Diagnostics, Inc. ("DSDI"), a Delaware corporation with its principal place of business at 4040 W. Royal Lane, Suite 136, Irving, TX 75063, and New Horizon Interlock Inc. ("DASP"), a Michigan corporation with its principal place of business at 29234 Lyon Oaks Drive, Wixom, MI 48393. Unless otherwise defined herein, capitalized terms shall have the definitions set forth in the Agreement.

WHEREAS, the term of the Agreement is set to expire on June 30, 2010 and DSDI has delivered written notice to DASP of its intent not to renew the Agreement; and

WHEREAS, the parties have agreed, in lieu of allowing the Agreement to expire on June 30, 2010, to extend the current term of the Agreement for an additional six months to permit more orderly transition by the parties to other business opportunities.

NOW, THEREFORE, for good and valuable consideration, intending to be legally bound and pursuant to the terms and conditions of the Agreement, it is hereby agreed as follows:

1.  Section 2 of the Agreement is hereby amended to extend the term of the Agreement until December 31, 2010. The Agreement shall automatically, and without further notice from either party, expire and terminate on December 31, 2010.

2.  During the extended term of the Agreement, the parties will cooperate in good faith toward the orderly transition of responsibilities for installing, leasing and/or servicing Draeger devices in the areas currently covered by the Agreement to Draeger or its designee(s).

3.  Section 4.1 of the Agreement is hereby amended to change the equipment lease fees for the XT and IL-920 interlock devices from $27.00 per month to $30.00 per month, effective July 1, 2010.

4.  In the event of any conflict, inconsistency or incongruity between the provisions of this Amendment and any other provisions of the Agreement, the provisions of this Amendment shall in all respects govern and control.

5.  This Amendment may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

6.  Unless otherwise expressly modified herein, the terms and conditions set forth in the Agreement remain unchanged and in full force and effect.

IN WITNESS WHEREOF, the parties have caused this Amendment to be executed as of _5-7-9_, 2010.

NEW HORIZON INTERLOCK INC.                     DRAEGER SAFETY DIAGNOSTICS, INC.

By: _____                 By: _____

Printed Name: _____                 Printed Name: George Ballance

Title: _____                 Title: President

3

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

Please visit our website at www.adr.org if you
would like to file this case online. AAA Case Filing
Services can be reached at 877-495-4185.

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

| *MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box.* ☐ |
|---|
| *There is no additional administrative fee for this service.* |

| Name of Respondent | Name of Representative (if known) |
|---|---|
| New Horizon Interlock Inc. | William Foren |
| Address | Name of Firm (if applicable) |
| 29234 Lyon Oaks Drive | Foren & Glaser |
| | Representative's Address |
| | 53435 Grand River Avenue |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Wixom | MI | 48393- | New Hudson | MI | 48165- |
| Phone No. | | Fax No. | Phone No. | | Fax No. |
| 800-597-5054/248-446-920 | | 248-446-9201 | 248-486-5115 | | 248-486-5119 |
| Email Address: | | | Email Address: | | |
| paul@interlockinfo.com | | | | | |

The named claimant, a party to an arbitration agreement dated ___May 29, 2008___, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE
Respondent breached various provisions of the Draeger Authorized Service Provider Agreement dated May 29, 2008 and amended on May, 29, 2010 (the "Agreement"; attached as Exhibit A) by failing to pay lease fees, failing to return Drager client records, electronic data and other reports, removing Draeger owned equipment from client vehicles and disclosing confidential information to third parties. Claimant seeks emergency relief for Draeger to turn over the client records, as discussed more fully in Exhibit B.

| Dollar Amount of Claim $250,000.00 | Other Relief Sought: ☒ Attorneys Fees   ☒ Interest |
|---|---|
| | ☒ Arbitration Costs ☐ Punitive/ Exemplary ☒ Other Emergency |

Amount Enclosed $ 550.00 _____   In accordance with Fee Schedule: ☐Flexible Fee Schedule   ☒Standard Fee Schedule

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
An attorney with commercial law experience.

Hearing locale Dallas, Texas _____   (check one) ☐ Requested by Claimant  ☒ Locale provision included in the contract

| Estimated time needed for hearings overall: | Type of Business: Claimant ___Device Manufacturer___ |
|---|---|
| _____ hours or ___1.00___ days | Respondent Distributor/Service Provider _____ |

Is this a dispute between a business and a consumer? ☐Yes ☒ No Does this dispute arise out of an employment relationship? ☐ Yes ☒ No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range?  Note: This question is required by California law. ☐Less than $100,000  ☐ $100,000 - $250,000 ☐ Over $250,000

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Signature (may be signed by a representative)   Date: | Name of Representative |
|---|---|
| *[signature]*   1/18/2011 | A. Christopher Young & Jennifer Lambert |
| Name of Claimant | Name of Firm (if applicable) |
| Draeger Safety Diagnostics, Inc. | Pepper Hamilton LLP |
| Address (to be used in connection with this case) | Representative's Address |
| 3135 Quarry Road | 3000 Two Logan Square, 18th & Arch Streets |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Telford | PA | 18969- | Philadelphia | PA | 19103- |
| Phone No. | | Fax No. | Phone No. | | Fax No. |
| 215-660-2263 | | 215-660-2742 | 215-981-4190/215-981-4277 | | 215-981-4750 |
| Email Address: | | | Email Address: | | |
| bonnie.chong@draeger.com | | | youngac@pepperlaw.com / lambertj@pepperlaw.com | | |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. Send the original Demand to the Respondent.

# EXHIBIT A

Draeger Safety Diagnostics, Inc.



# DRAEGER AUTHORIZED SERVICE PROVIDER
# AGREEMENT

This Agreement is entered into by Draeger Safety Diagnostics, Inc., (hereinafter referred to as "Draeger"). whose address is 4040 W. Royal Lane, Suite 136, Irving, TX 75063 and **New Horizon Interlock, Inc.,** (hereinafter referred to as "DASP"), whose address is 29234 Lyon Oaks Drive, Wixom, MI 48393.

*Whereas,* Draeger is the manufacturer and Lessor of Draeger products (hereinafter known as "device(s)." 'Draeger Interlock devices," "interlock[s]," or "ignition interlock[s]") designed for use in motor vehicles. Draeger is responsible for all service, maintenance and upgrade described in this Agreement (including firmware, software associated with the performance of the ignition interlock device which is the subject of this Agreement and hardware repairs and changes that are required to meet the need of the market and the customers and Clients therein from time to time) and continuing research, design, and development of such equipment.

*Whereas,* Draeger shall retain responsibility for reporting all Client compliance and non-compliance to the appropriate governing agency. In addition, Draeger shall strive to increase utilization of ignition interlock technology through marketing and business development efforts.

*Whereas,* Draeger, as manufacturer and Lessor of such devices, seeks an authorized Service Provider (hereinafter referred to as the "DASP") to provide field services consistent with Draeger standards of quality that include (but are not limited to) the installation, periodic calibration, and authorized removal of the Draeger Interlock device(s), and any future ignition interlock device(s) that might be developed by Draeger as part of continued responsibilities that it has for research and development of newer interlock devices (the "devices").

*Whereas,* DASP desires to be authorized to install, inspect, calibrate, and de-install the Draeger Interlock device(s) upon the terms and conditions set forth below.

**NOW THEREFORE, THE PREMISES CONSIDERED THE PARTIES AGREE AS FOLLOWS:**

1. <u>Appointment as DASP</u>. Draeger hereby appoints DASP to be Draeger's authorized Service Provider to Draeger Clients (equipment Lessees) in order to provide the services listed herein at the address or addresses listed in Exhibit A. DASP agrees to abide by the terms and conditions as set forth herein, assure that all service technicians it employs for the purposes of installing and maintaining Draeger Interlock devices are trained to Draeger standards, and provide the following services on such devices:

   a. installs/de-installs the devices as required on Draeger's Clients automobiles or other means of conveyance, as well as safety sensitive workplaces that might require the use of a device, and

Initials *[signature]*                  5/29/2008                  Page 1 of 15

Draeger Safety Diagnostics, Inc.                                        .

    b.  provides calibration services of the devices as required by such equipment or by agreement with Judicial or Governmental agencies, and

    c.  collects electronic data from the device and Client program information to be transferred to Draeger at times and by means designated by Draeger. Draeger shall retain responsibility for dissemination of Client data to appropriate authorities, and

    d.  is responsible for the cost and expense to establish and maintain DASP facilities and trained service technicians.

2.  <u>Term.</u> The term of this Agreement shall commence on July 1, 2008, and continue through June 30, 2010, unless sooner terminated pursuant to Paragraph 3. This Agreement shall automatically renew for an additional 1-year increment thereafter unless either party gives 30 days written notice to the other of its intent not to renew.

3.  <u>Termination by Draeger or DASP.</u>

    a.  This Agreement may be terminated prior to the expiration of its term by Draeger or DASP upon the occurrence of any of the following events, each of which will be deemed a default hereunder.

        i.  Immediately, upon any material breach of this Agreement (a material breach is defined as (a) a failure to timely pay invoices or meet other payment obligations; (b) a breach of Paragraph 4, 7, 8, 17, or 20(g) of this Agreement; (c) any failure to comply with any provision of this Agreement that is not cured within the cure period set forth in subsection 3.a.ii. below; or (d) any act found to involve fraud or misrepresentation by a party or by any conviction of a criminal act in any state by the other party); or

        ii.  Upon thirty (30) days written notice to DASP of any breach or failure of performance by DASP of any provision of this Agreement, or failure to perform an obligation within the time period prescribed which is not cured within a thirty (30) day period following the notice of breach or failure of performance; or

        iii.  Immediately, if DASP or Draeger becomes insolvent or makes a general assignment for the benefit of creditors, or to an agent authorized to liquidate its property or assets; or becomes bankrupt, or voluntarily files a petition in bankruptcy, or has a voluntary petition in bankruptcy filed against it; or suffers the appointment of a receiver of any of its assets and property; or upon the dissolution or liquidation of DASP or Draeger; or

        iv.  Immediately, if a governmental or judicial entity prohibits interlock Clients from obtaining service from DASP; or

        v.  Immediately, if there is consequential change in the number of days or hours available to Draeger Clients for service as recorded in Exhibit B of this Agreement.

Draeger Safety Diagnostics, Inc.

b.  In the event of such cancellation, termination or expiration of this Agreement, or in the event that Draeger or DASP provides written notice of a breach of this Agreement, DASP shall not remove any device from a Client vehicle without written approval from Draeger. Further, should DASP be directed by Draeger or any legislative or other entity to which Draeger is contractually obligated to provide interlock services, to remove installed interlocks, such removal costs will be the responsibility of DASP.

c.  Within five (5) days of cancellation, termination or expiration of this Agreement, DASP shall return to Draeger all un-installed rented/leased devices and equipment in its possession, and turn over all records, electronic data, and reports relating to this Agreement. The parties expressly acknowledge and agree that such records, electronic data, and reports relating to the services provided pursuant to this Agreement are the property of Draeger; provided, however, that DASP may retain copies of such records, electronic data, and reports for the purpose of complying with statutory data or records retention obligations or for prosecuting or defending non-payment, default, or other claims relating to DASP services.

4. Scope of Services by DASP. DASP will provide service at the address or addresses listed in Exhibit A.  DASP will collect and transfer electronic records to Draeger as required by the respective referring agencies.

a.  Good and Workmanlike Manner. DASP shall perform all installations, calibrations, services, maintenance, repairs, and removals, under this Agreement in a good and workmanlike manner.

b.  Maintenance.  DASP shall perform preventive maintenance not otherwise covered by Warranties on the devices to keep the devices in good working order (defined as meeting or exceeding Draeger's Quality Assurance Program for all interlock service providers), and shall provide all labor, tools and equipment required to correct any routine, non-warranty problem with the device. Draeger's current Preventive Maintenance Schedule is attached hereto as Exhibit B.

c.  Routine Records. DASP shall transmit to Draeger electronic Client records including device data, according to the terms and conditions specified by Draeger or the respective state administrative or judicial programs.  Draeger shall be responsible for providing required reports and information to governing authorities.

d.  Phone and Internet Service. DASP shall provide phone and/or Internet service to adequately facilitate day-to-day operations, or as specifically outlined by a state or jurisdiction, continuously throughout the life of this Agreement. Governmentally required toll-free phone service that might be required by such authorities shall be provided by Draeger.

e.  Service Response.  DASP must respond to all referrals by Draeger or any Jurisdiction to potential Clients within 48 hours of notification thereof. DASP must as soon as practicable provide maintenance service for Devices in the event that a Device calls for "SERVICE REQUIRED" or is malfunctioning. DASP must use reasonable efforts to prevent a Client from operating a motor vehicle without a functioning Device. In the event that a motor

Draeger Safety Diagnostics, Inc.

vehicle has been driven by a Client without an operating Device, DASP must notify Draeger immediately. Draeger shall be responsible for notifying the proper authorities as required.

f.  Service Accessibility.  Work hours expended and the number of locations and technicians employed to provide services must be sufficient to meet or exceed each Jurisdiction's applicable requirements.

g.  Service Days and Hours.  DASP service location or locations shall be open and available to Draeger Clients for service according to the days and hours listed in Exhibit B of this Agreement. Draeger must approve any permanent change in days or hours of service that would decrease the availability of service.

h.  Requirement for Technician Certification. The parties agree that where states or local governmental authorities require the certification of interlock service technicians or service facilities, the responsibility and any cost for obtaining such certification shall rest with the DASP.

i.  Cost Collection. DASP shall collect and remit to the appropriate government authorities all taxes or fees required for their program of service work in accordance with applicable Federal, State and Local laws or regulations.  DASP shall make available annually to Draeger any and all documentation regarding payment of applicable taxes and/or fees required collected and/or paid under this section.

j.  DASP Compensation/ Fees from Draeger Clients. DASP may charge and retain other fees due from Draeger Clients. Such fees may include, but not be limited to. "installation fees", "de-installation fees", "change vehicle fees", "late appointment fees", "road service fees", "violation reset fees", or other reasonable fees assessed by the DASP.  DASP will provide notification to Draeger when making changes to DASP's standard fees outlined in Exhibit C.

k.  Service Fees and Fee Collection. DASP shall be solely responsible for the collection of any and all fees, taxes, filing fees (if any are applicable) and any other costs that it is entitled to collect/charge, and will hold Draeger harmless for the collection of such fees.

l.  Draeger Clients Lease Fees, Loss/Damage Fees, Fee Collection, and Payments. DASP shall be responsible for the collection of all Clients lease fees, applicable tax, and loss/damage fees. DASP shall be provided a monthly statement of fees payable to Draeger, and shall be responsible for payment of all fees to Draeger regardless of whether DASP has collected applicable fees.  Fees shall be in the following amounts:

1.  Equipment lease:  $27.00 per month for XT interlock devices and $27.00 per month for IL-920 interlock devices.
2.  Tax:  Pursuant to local tax regulations.
3.  Terms:  Net 30 days.

For payments more than 30 days past due, Draeger may place DASP's account on hold and may, in addition to any other remedies Draeger deems appropriate, including termination of this agreement, withholding shipments of new Devices, warranty repaired Devices, or supplies and accessories until the account is paid in full.

Draeger Safety Diagnostics, Inc.

m. <u>Replacement Costs</u>. The price payable by DASP to Draeger for lost, stolen or destroyed Devices shall be $975.00 per Device. The price for each lost, stolen or destroyed handset component of a Device shall be $825.00 per Device. The price for lost, stolen or destroyed [I/O] components of Devices shall be $150.00 per Device. Replacement fees shall be subject to reasonable modification from time to time, upon prior written notice, to reflect relevant market conditions. DASP must promptly notify Draeger in writing of any lost, stolen or destroyed components or Devices and shall be responsible for any costs and expenses resulting from or related to lost, stolen or damaged Devices.

n. <u>Lost or Stolen Systems</u>. In the event a Client does not report for calibration/monitoring service within the specified "grace period", DASP shall be responsible for reporting this to Draeger. Draeger will notify the governing authority of the Client's breach of contract. DASP will make reasonable efforts to recover Draeger property.

o. <u>Background Investigations & Duty to notify</u>. DASP represents, warrants and agrees that with regard to self, any employee, or any person providing ignition interlock service in any capacity on behalf of DASP, DASP shall report to Draeger any arrest, criminal complaint, conviction, or other official criminal proceeding that DASP becomes aware of, either directly or indirectly, that involves the use of alcohol or drugs, or is in any way related to the qualifications, function, and duties related to the installation and inspection of the Device. Failure to report such to Draeger within two (2) business days shall be grounds for immediate termination of this contract. DASP agrees that said obligation is a material term of this Agreement. DASP further agrees that with regard to self, any employee, or any person providing ignition interlock service in any capacity on behalf of DASP, DASP shall terminate the employment of any person providing ignition interlock service who is the subject of arrest, criminal complaint, conviction, or other official criminal proceeding that DASP becomes aware of, that involves the use of alcohol or drugs, or is in any way related to the qualifications, function, and duties related to the installation and inspection of the Device. DASP agrees and understands that if required by local regulations, background checks must be conducted on all staff as required by law, rules, or regulations. The cost for such investigation shall be the responsibility of the DASP.

5. <u>Obligations of Draeger</u>

a. <u>Marketing & Promotion</u>. Draeger shall assist in the marketing and promotion of the Draeger system to any and all judicial, governmental, corporate or private entities.

b. <u>Judicial & Governmental Liaison</u>. Draeger shall be responsible for all contact with judicial or governmental authorities with regards to required reporting. DASP shall refer all calls concerning reporting from such authorities to Draeger's designated employee. DASP is responsible to liaison with judicial and governmental authorities with regards to referrals.

c. <u>Requirement for Device Certification</u>. The parties agree that where states or local governmental authorities require the certification of ignition interlock devices, the responsibility and any cost for obtaining such certification shall rest with Draeger.

Draeger Safety Diagnostics, Inc.

d.  <u>Equipment and Stock</u>. The following shall be provided to DASP by Draeger at no cost on an as-needed basis (as defined in paragraph 20. a.): program software and brochures. DASP shall be responsible for the purchase of consumable mouthpieces, approved alcohol simulator, and certified alcohol solution, such items to be purchased from Draeger at Draeger's list price less 15% plus shipping.

e.  <u>Stand-By Inventory</u>. Draeger will provide stand-by inventory at no cost to DASP, excluding shipping costs, by direct shipment utilizing ground transportation. Stand-by Inventory shall be provided based on the following chart:

| # of Units | | | Shelf Stock |
|---|---|---|---|
| 1 | - | 50 | 2 |
| 51 | - | 100 | 3 |
| 101 | - | 150 | 4 |
| 151 | - | 200 | 5 |
| 201 | - | 250 | 6 |
| 251 | - | 300 | 7 |
| 301 | - | 350 | 8 |
| 351 | - | 400 | 9 |
| 401 | + | | 10 |

f.  <u>Initial Training Program</u>. As soon as possible following the execution of this Agreement, or at such other time as Draeger and DASP may agree, Draeger shall make available to DASP's key service personnel (maximum of six (6), such personnel at any one time), training, advice and guidance as Draeger deems necessary to be appropriate to allow for the proper training and instruction for installation and service of the Draeger Interlock device. Normal time required for such training is two to three days, but may take longer depending on the level of competence of the DASP personnel. Draeger shall provide such complementary training to DASP. Such training shall include installation, servicing, and electronic data collection of any Draeger device being used from time to time by DASP. Expenses for travel, room, and board associated with the above training will be borne by DASP.

g.  <u>Continuing Training Program</u>. Draeger shall make available additional training courses for new employees assigned to this application, after the initial training for the persons described in subparagraph 'f', above, at the rate of $150.00 per day for each person (minimum of 2 persons required). Expenses for travel, room, and board associated with the above training will be borne by DASP. To the extent possible, Draeger will provide additional training materials and updates on manuals and software by way of disk, mail, or e-mail or by other suitable means, to allow DASP key service personnel to train DASP technicians in present or future devices, their service features, maintenance and their repair for non-warranty purposes. Draeger reserves the right to change the rate for charges for additional training if DASP requires additional course content in an amount reasonably calculated to fairly compensate Draeger for the additional course content.

h.  <u>New and Updated Technology</u>. Draeger shall make available to DASP all new Draeger

Draeger Safety Diagnostics, Inc.

Interlock devices, information and technology as it becomes available. Both parties agree that the interlock technology will be changing rapidly and that staying abreast of those changes and offering up-to-date technology and software is important to maintaining a leadership position in the interlock industry.

i.  Product liability. Draeger will provide product liability insurance in the amount of at least that required by any state or interlock program and will provide to DASP proof that DASP and the respective state program is an additional insured under that policy as such programs are established.

j.  Warranty of Devices.  Draeger will provide warranty service for the devices except for misuse as defined in paragraph 21 of this Agreement. Warranty service shall include any service to parts or material of the device or the firmware that controls the device resulting from defective materials or workmanship by Draeger, or that can not be serviced in the field, including repairs to the sensor or sampling system, system circuit boards cases (except by misuse), or any components of the device. DASP shall return to Draeger all devices in need of warranty service.  The cost of shipping to Draeger's designated address shall be borne by Draeger.  Draeger may, in its discretion, provide a new or refurbished interlock device that is compatible with the program in which the device is being serviced by DASP in place of the device that has been returned for warranty service. DASP shall provide to Draeger a written statement/ observation with each device returned (with an authorized RMA#) indicating the reason for the return, to assist Draeger in making the repairs to devices returned.

k.  Non-Warranty Repairs and Costs. DASP shall be required to pay Draeger for repair or inspection work required to be performed on devices due to the misuse, abuse, or neglect of devices by DASP.  For Non-warranty repairs Draeger shall invoice DASP and DASP shall pay Draeger $73.00 per hour for labor, plus costs for parts.

l.  Warranty Service.  If DASP is requested to retrieve a Device, or to provide remote (out of shop) warranty service for Draeger equipment, DASP must obtain prior approval from a designated Draeger employee. DASP shall provide an explanation of the reason for the need of service, estimate of time needed to provide service, and location of the service.  Approved service shall be documented by DASP on the appropriate Draeger form and submitted by DASP to the designated Draeger employee.

m. Device Certification.  Draeger shall provide, upon DASP's request, documentation confirming that Draeger Interlock devices meet the certification requirements of the jurisdiction in which DASP is authorized under this Agreement to perform services with respect to such devices.

n.  Service Support Materials and Software.  Draeger agrees that it shall provide DASP with all information about Draeger Interlock devices that Draeger deems necessary for performing the services DASP is obligated under the terms of this Agreement to provide. Any drawings, data, designs, software programs or other technical information supplied by Draeger in connection with this Agreement shall remain Draeger's property and shall at all times be held in confidence by DASP. Such materials and information shall be used only for purposes of allowing DASP to perform the services required under this Agreement, shall not be used for

Initials _[signature]_          5/29/2008          Page 7 of 15

Draeger Safety Diagnostics, Inc.

any other purposes, and shall not be reproduced or disclosed to others without Draeger's prior written consent. Upon termination of this Agreement, DASP shall not be authorized to use such materials and information and shall return to Draeger any and all originals and copies of such materials and information.

6. <u>Litigation Disclosure.</u>  DASP and Draeger shall disclose to each other any litigation or investigations concerning ignition interlock service, whether prior or pending, or occurring in the future.  Notice of such litigation or investigation shall be given by one party to the other within twenty (20) days of notification.  Failure to so notify the other party of litigation or an investigation may be grounds for cancellation of this Agreement by either party.

7. <u>Change of Status.</u>  Because both parties agree that it is important to allow the other party to know who to contact in the other organization at all times about any problems or issues that might arise from time to time in the event that there is any change in DASP directors, officers, management, DASP shall report such change, including all pertinent addresses, to Draeger within five (5) days of such change via phone/fax to be followed by written confirmation. Draeger shall have the right to conduct background checks on any person under this section, such checks may include, but not be limited to, criminal history, credit, financial, and/or driving history, as deemed appropriate by Draeger.  Likewise, changes in Draeger Safety Diagnostics, Inc. directors, officers, or its corporate management or the account representative for the division shall be reported to DASP within five (5) days of such change via phone/fax to be followed by written confirmation.  Failure to disclose such changes within the time period set forth above will be grounds for termination of this Agreement, if such failure causes any material loss to the parties entitled to the notice.

8. <u>Non-competition, Non-Disclosure.</u> DASP shall not, during the term of this Agreement, either directly or indirectly, on its own behalf or in the service or on behalf of others, engage in, contract for, or be involved in any business which is the same or essentially the same, or in any way competes with the Draeger Interlock device. DASP shall not use any manufacturer's device other than Draeger's during the term of this Agreement unless the same is canceled by either party as permitted in this Agreement. It is recognized by each party that during the course of the execution of this Agreement and the respective roles described in this Agreement, each party will come into possession of, or have knowledge of, software designs, hardware designs and other proprietary information of the other. Each party warrants and agrees that it will not disclose any such proprietary information of the other that it might come to have in its possession at any time from this date forward, and continuing to a period of 5 years after the termination of this Agreement. Upon termination of this Agreement, no party shall use the proprietary information of the other party unless expressly authorized to so under the terms of this Agreement.

9. <u>Status of the Parties.</u> The relationship created by this Agreement shall be that of DASP being authorized by Draeger to perform the services described herein for Draeger devices and the Clients leasing those devices.  Neither party will bind the other to any agreements or representations without its expressed written approval. Nothing in this Agreement shall be construed so as to create any relationship other than that of a service provider of Draeger products.

DASP shall perform its duties hereunder as an independent contractor, and not as an employee,

Draeger Safety Diagnostics, Inc.

agent, or franchisee of Draeger. Neither DASP nor any agent or employee of DASP shall be or be deemed to be an agent, franchisee, or employee of Draeger; likewise, no agent or employee of Draeger shall be considered an agent, franchisee, or employee of DASP.

Nothing contained in this Agreement shall be construed as indicating that Draeger is taking responsibility (nor is Draeger responsible) for monitoring or supervising the installation or maintenance services rendered by DASP pursuant to this Agreement.

DASP acknowledges that DASP and its employees are not entitled to unemployment insurance benefits unless DASP or a third party provides such coverage and that Draeger does not pay for or otherwise provide such coverage. DASP shall have no authorization, express or implied, to bind Draeger to any Agreements, liability, or understanding, and shall not be authorized to make any representations on behalf of Draeger or to claim any affiliation whatsoever with Draeger except as expressly set forth herein. DASP shall provide and keep in force workers compensation and unemployment compensation insurance (and provide proof of insurance on a semi-annual basis) in the amounts required by law, and shall be solely responsible for the acts of DASP, its employees and agents.

10. Insurance. DASP shall, at its own cost and expense, purchase and maintain, continuously throughout the term hereof, the following insurance coverage, against damage or loss caused by DASP or its employees or agents:

    a. Commercial General Liability in no less than $1,000,000 per occurrence and $2,000,000 aggregate limit for Bodily injury and Property Damage or Garage Insurance in no less than $1,000,000 per occurrence and $2,000,000 aggregate limit for Bodily injury and Property Damage.

    b. Automobile Liability for Owned and Non-Owned automobiles as required by the respective states.

    c. Workers' Compensation Insurance and Unemployment Compensation Insurance, as required by the respective states, with respect to all DASP employees, officers, and owners.

    d. Proof of all Commercial General Liability or Garage Liability insurance required above to be provided and maintained by DASP hereunder shall be provided to Draeger within ten (10) days of the execution of this Agreement, certificates evidencing all insurance required under this section. All policies shall be endorsed to provide that they may not be terminated or canceled except upon thirty (30) days prior written notice by the insurer to Draeger. DASP must provide proof of such coverage to Draeger in the form of a certificate evidencing insurance coverage and showing Draeger as an additional insured.

11. Assignment. DASP shall not sell, assign, transfer, sub-license or encumber this Agreement or any right or interest of DASP herein, or suffer or permit any such sale, assignment, transfer, sub-license or encumbrance to occur by operation of law or otherwise, without the prior written consent of Draeger. Any violation by DASP of this section shall constitute a material breach of this Agreement and Draeger shall have the right to immediately terminate the Agreement upon written notice to DASP.